# Baker *versus* Findley.

1. The owner of three adjoining surveys, amounting in all to less than 200 acres, resided on the middle survey and improved it, and used the other two as woodland during 21 years, occupying the whole as one farm, the greater part of the land being however included in another warrant for 400 acres, and survey thereon older than the two woodland tracts, but on such older warrant there was no occupancy or improvement by the claimant, and no assessment or payment of taxes for it for above 21 years:

It was *held*, that such use of the woodland, in connection with the residence and cultivation on the other tract, gave title to the whole of the three surveys against the said adverse warrant and survey, by the statute of limitations.

2. The owner of the larger warrant, by the acts on the ground under the other surveys having notice of the adverse claim of title, and by such abandonment and nonpayment of taxes, having confessed himself disseised, and not making any claim at the time of the trial of this suit, it was not competent for the defendant, as purchaser of the said three tracts, to set up a claim of title under such larger warrant against the payment of his bonds given for a part of the purchase-money of the said three tracts.

ERROR to the Common Pleas of *Indiana county.*

[Baker *v.* Findley.]

This was an action by George Findley and Pamelia Findley, for the use of William Clarke, against Elias Baker. It was an action of debt, on three bonds, dated 29th April, 1846, for $500 each, given by Elias Baker to George and Pamelia Findley, who assigned the same to Wm. Clarke. These bonds were given for part of the purchase-money of a tract of land sold by said Findleys to said Baker, for the consideration of $3000. Deed dated 28th April, 1846, with special warranty. The article of agreement, dated 26th March, 1846, showed a purchase by the acre, at $15.40 per acre.

On the part of the plaintiff, the title of the land sold was founded on three warrants in the name of Jane Findley; 1st, dated 28th Nov. 1786, for 50 acres, surveyed 23d May, 1788, 70¾ acres; patented 19th January, 1799 : 2d, dated 29th Sept. 1795, for 50 acres, *surveyed* 24th June, 1811, 68 acres, 17 perches; *accepted 18th May*, 1841 : 3d, dated 25th August, 1806, for 50 acres, *surveyed* 24th June, 1811, 55 acres, 162 perches; *accepted 8th Sept.* 1817. The buildings and improvements were on the elder Jane Findley survey; but the evidence showed that the Findleys cut firewood and saw-logs on the two other Findley surveys, from time to time; but it left it somewhat doubtful whether there had been any cultivation or enclosure of any part of the two junior Findley surveys for a period of 21 years.

The defendant resisted the payment of the money mentioned in the bonds, on the ground that the greater portion of the land embraced in the two junior Findley surveys was taken away by an older and better title; and, to show this, gave in evidence a warrant to *James White* for 400 acres, dated 15th January, 1794, being subsequent to the first of the Findley surveys, and *prior* to the two others, a survey thereon 21st Nov., 1794, of 407½ acres, and a patent for the same to Wm. M. Biddle, dated 8th July, 1796, covering the larger portion of the whole three Findley surveys.

On the part of the plaintiffs it was contended that the title under the James White survey had been divested by the statute of limitations.

The Court charged the jury, that even if Findley did not clear or cultivate on either or both the junior Findley surveys, yet if the jury were satisfied that, while he resided on the middle tract, he exercised ownership over the other two after 1811 by open and notorious acts, such as taking firewood and other timber for his place, cutting saw-logs, paying taxes, &c., it was a sufficient ouster, and if continued for 21 years, would establish the Findley title by the statute of limitations.

The charge of Burrell, J., was, further in part, as follows :—

" At this period the law favors the presumption that the James White survey was regularly made, and, unless the plaintiff has

[Baker *v.* Findley.]

shown this title divested in whole or in part, so far as it covered the same ground with *the two later Findley surveys*, or some other good reason to the contrary, the defendant would have a good right to resist payment in full or in part, of the bonds in suit, on the ground that he did not get all the land contracted for, and for which the bonds were given. The plaintiff contends that the White title has been long since divested by virtue of the statute of limitations—that, having color of title there has been an adverse possession under the Findley claim for more than 21 years, and that the owner of the whole survey has been ousted for that period. The warrants and surveys in 1811, *though the surveys were not returned* (till 1817 and 1841), gave Findley a sufficient color of title to enable him and those claiming under him to avail themselves of the statute, if actual ouster is shown.

"It seems Findley resided on the middle tract. Whether he occupied and cultivated the upper and lower tracts, must be determined by the jury. Residence is the most clear evidence of ouster. Cultivation without residence is evidence of the same fact, and may show adverse possession and ouster as well, though, perhaps, not so unequivocally as actual residence. Here the party had three small adjoining surveys. He resided on the middle survey, and as to that one, the defendant does not press his defence. The question of fact then is, did Findley, after the surveys in 1811, while living on the middle tract, *clear and cultivate* portions of the other two; and if so, was it for more than 21 years before the sale to Baker, and was it kept up? If the jury find affirmatively on these points, there is a sufficient ouster shown, and the Findley title is good.

"But the plaintiff contends further, and in this we concur with him, that if Findley did *not clear or cultivate* on either or both these two tracts, yet if the jury is satisfied that while he resided on the middle tract he exercised ownership over the other two after 1811, by open and notorious acts, such as taking firewood and other timber for his place, cutting saw-logs for his mill, and using the woodland in the same manner as farmers and those having saw-mills usually use their woodland; if, in short, he occupied the whole three tracts together as one farm, for the required period of 21 years, and if, during all this time the owner of James White paid no taxes on the land, and Findley did pay them, we think it a sufficient ouster, and that the statute of limitations establishes the Findley title. The nonpayment of taxes by the owner of James White is a circumstance leading to the inference of ouster, because it is a kind of tacit admission of it. We can gather from the spirit of the law no reason why the Findley title should not be good under the statute as to the whole three adjoining surveys, if they were occupied together as one farm (although one or two of them may not have been actually cultivated for the

[Baker *v.* Findley.]

requisite period), by the same rule which would assuredly protect it if the land were in one survey. The question is of actual ouster. A constructive possession follows a warrant and survey, and, in case of conflict, the constructive possession of the elder title of course prevails. But the owner of the junior warrant and survey may, by taking actual, oust the constructive possession of the senior warrantee, and if he continues it for 21 years his title is good, although the disputed portion, or interference in the survey, may have remained woodland all the time. The owner of three small adjoining surveys interfering with other surveys, who culti-vates *on but one or two of them, but occupies and uses the whole three as one farm, treating and using the woodland as others do theirs,* and pays the only taxes paid on the land he claims, commits as notorious and unequivocal an ouster, and takes a possession as visibly adverse as if he had but one survey."

March 30, 1852, verdict for plaintiff for $1770.

It was assigned for error: 1. The Court erred in instructing the jury that, even if Findley did not clear or cultivate on either or both these two tracts, yet if the jury is satisfied that, while he resided on the middle tract, he exercised ownership over the other two after 1811, by open and notorious acts, such as taking fire-wood and other timber for his place, cutting saw-logs, paying taxes, &c., it was a sufficient ouster, and, if continued for twenty-one years, would establish the Findley title by the statute of limitations.

2. The Court erred in charging the jury that the owner of three adjoining surveys, interfering with others, who cultivates on but one or two of them, but occupies and uses the whole three as one farm, treating and using the woodland as others do theirs, and pays the only taxes paid on the land he claims, commits as notorious and unequivocal an ouster, and takes a possession as visibly adverse as if he had but one survey.

*Banks,* for plaintiff in error.—It was contended that the Court carried the doctrine of constructive possession too far; and that in no reported case had it been decided that a person residing on one survey can, by repeated acts of trespass on an adjoining sur-vey, obtain a title to the latter by the statute of limitations. That occasional occupancy, and an uninterrupted use of it *as woodland,* will not give title: 10 *Watts* 141, Sorber *v.* Willing; 10 *Ser. & R.* 305, Royer *v.* Benlow; 9 *Watts* 172, Wright *v.* Guier.

Payment of taxes, long continued, will not confer title: 10 *Watts* 142, Sorber *v.* Willing.

As to the delay in returning the surveys, reference was made to 5 *Watts* 524–5, Steinmetz *v.* Logan; 1 *W. & Ser.* 166, Strauch *v.* Shoemaker.

[Baker v. Findley.]

*White*, with whom was *Coffey*, for defendant in error.—The plaintiff below brought this action to recover on three bonds, for $500 each, which were given as part of the consideration for the conveyance of three small tracts of land adjoining each other, and containing in the aggregate about 195 acres and allowance, all of which were surveyed upon warrants to Jane Findley, one of which was patented on the 19th January, 1790, and the other two were surveyed on the 24th June, 1811, at which time a portion of the deputy-surveyors' fees was paid, and the residue of his fees was paid on the 15th October, 1811, but it appeared that one of those surveys was not returned into the surveyor-general's office until 18th May, 1841. Upon the patented tract there was a grist and saw-mill erected, and upon that tract the ancestor of the plaintiff resided, occupying the whole three tracts as one farm, built a cabin upon one of the other tracts, cut firewood and saw-logs over the land, and he showed the assessment of the land for taxes to his father and himself from the year 1816 till 1847, when it was returned to Elias Baker.

In the year 1808, the James White tract was returned as a speculation unseated tract, and from that year it was not mentioned on the tax-list.

It was contended that the Findleys having had the possession of all these tracts from 1811, when the two latter surveys were made, and the deputy-surveyor's fees having been paid, they were not to be prejudiced by his neglect to return one of the surveys; and upon this point reference was made to the case of Adams *v.* Jackson, 4 *W. & Ser.* 55, in which, it was said, this point was ruled, even *without possession* in the warrant holder.

In the main part of the charge there was no error. Findley was in possession of the land under color of title as to the two later surveys, and the whole three constituted a farm of a moderate size, in that section of country. It was conceded that, if all the land was *in one tract*, the charge was correct; but, on the part of the defendant in error, it was contended that it did not make any difference that there was one or two lines running through the land, if the Findleys had occupied it all as one farm. That it has been decided, that if a man lays a warrant over two or more elder surveys, and enters, builds, and occupies a portion of the land upon one of the older surveys, and his occupancy of the others is only by cutting wood, yet if he continues in possession for 21 years, that possession is protected to the extent of the lines of his survey: 5 *Barr* 291, Kite *v.* Brown; and 5 *Barr* 300, Waggoner *v.* Hastings; and Hatch *v.* Smith, 4 *Barr* 109. Yet the division of his adversary's tracts of land severs his occupancy quite as much as a line of his own could do. It may render it more difficult for him to satisfy the jury what he did occupy; but the Court gave the plaintiff in error the benefit of that doubt, and

required the plaintiff in the suit to show that the whole had been occupied as one farm. The cases referred to by the plaintiff in error are cases of mere intruders *without color of title,* and Sorber *v.* Willing was a case of trespasses repeated.

It was stated that the land was assessed for a part of the time as one body, and never as more than two lots.

But if any additional evidence to establish an ouster of the owner of the James White survey was requisite, it existed in the omission to pay taxes, which has been regarded by this Court as an admission that the owner is disseised: Reed *v.* Goodyear, 17 *Ser. & R.* 350; McCall *v.* Neely, 3 *Watts* 70.

The opinion of the Court was delivered, January 6, 1853, by

WOODWARD, J.—No error has been assigned to that part of the charge in which the Court held Findley's warrant and survey of 1811, though not returned till 1841, sufficient color of title for the purposes of the statute of limitations. The argument addressed to us on this point was, therefore, superfluous.

The 1st and 2d errors assigned relate to the charge of the Court upon the effect of Findley's occupancy of the middle tract of three small surveys, and of his exercise of ownership over the two adjoining tracts under color of title. We have carefully considered this part of the charge, and are of opinion that there is no error in it.

The doctrine that possession, under color of title, is co-extensive with the color, is, in general, applicable only to the tract of land actually occupied, and not to contiguous tracts. A striking illustration of the necessity for such a limitation of this doctrine will be found in the case of Hole *v.* Rittenhouse, 7 *Harris* 305. There, a man having a deed for some 15 contiguous tracts of land, of 400 acres each, sat himself down on one of them and made an improvement which extended on the next adjoining tract. In virtue of that improvement and possession, occupying parts of two tracts for 21 years, we held him to have acquired the right, against a superior paper title, to all the land within the lines of these two tracts, but not beyond. To have expanded his possession by construction to the extent of his colorable title, would have swept away the whole 15 tracts.

It is obvious that this necessary limitation of the doctrine is in conflict with the charge of the Court in the case now before us, yet there is a material fact here which modifies the limitation. One of the Findley warrants was surveyed to include 70¾ acres; another, 68 acres 17 perches; the third, 55 acres 162 perches; all together including less than 200 acres. On the middle one of these small surveys, Findley had his buildings and improvements, and resided. If he did not clear or cultivate portions of the other two tracts for 21 years, he exercised acts of ownership over them

from 1811, by open and notorious acts, such as taking firewood and other timber for his place, cutting saw-logs for his mill, and using the woodland in the same manner as farmers, and those having saw-mills, usually use their woodland—in short, he occupied the whole three tracts together as one farm, for the required period of 21 years, and during all this time the owner, James White, paid no taxes, and Findley paid them.

These conclusions of fact are established by the finding of the jury under the directions they received from the Court. They distinguish the case from Hole v. Rittenhouse. . There, the land claimed was more than can possibly be the subject of such acts as farmers and improvers ordinarily exercise over their adjacent woodlands; here, the quantity was less. There, such ownership was not exercised. Here, it was. In such questions as this there is no mysterious virtue in lines. White suffered himself to be ousted from his land by the entry of Findley into 200 acres of it. Of what moment is it that Findley run lines to divide the 200 acres into three parts, if he occupied the whole? The exterior lines of his three surveys were the limits of his claim. The interior lines, made for his own accommodation, and themselves an assertion of ownership, signified nothing as to the disseissin and ouster of White. The open, notorious acts on the ground, for 21 years, were notice to White of the extent and hostility of Findley's holding, and, having fled the field for so long a period, confessing himself disseised by nonpayment of taxes (Read v. Goodyear, 17 Ser. & R. 350; McCall v. Neely, 3 Watts 70), and not yet, even, returning to assert his lost rights, it is not for this defendant to assert and set them up against the payment of his bond. In the case of Criswell v. Altemus, 7 Watts 566, it was held, that such acts as distinguished Findley's occupancy were a possession of woodland, even by an intruder without title or color of title; and since that case, such acts have often been adjudged possession. When done under color of title, they are more significant and decisive than if done by a mere intruder. In a late case, Alden v. Grove, 6 Harris 377, it was said, since the cases of Altemus v. Criswell and those which follow in its wake, it is vain to deny that the intruder's use of the woodland, as woodland is ordinarily used, is, in the eye of the law, *actual possession* of it, as truly and effectually for the purposes of the statute of limitations as his cultivation of fields is actual possession of them. If Findley had cultivated fields on the two adjoining tracts for 21 years, nobody pretends that they would not have been an actual possession to give title. But, according to the adjudged cases, the acts performed by him were no less actual possession. The conclusion is obvious and inevitable.

The efficacy of such acts must be limited to the quantity of land farmers usually occupy. A man goes on a 400 acre tract

of land and cultivates a fourth·or a half of it, and uses the rest for such purposes as woodland can supply to such an occupier. He has actual possession·of the whole—of the woodland not less than of the fields. Whether the rule can be applied to a larger tract than 400 acres is unnecessary to inquire. But there is no difficulty in applying it to less than that quantity. Here the three warrants were all owned by Findley, and together did not constitute as large a tract as farmers often occupy.

For these reasons we think the rule in Hole *v.* Rittenhouse does not apply, and that the Court laid down the law of the case correctly.

It follows from all this that there is nothing in the third error assigned; for, if Findley's title be perfect, the Court were right in holding that Baker should pay for it according to his contract.

Judgment affirmed.