## McArthur *et al.* *versus* Kitchen.

1. McArthur owned a seated tract interfering with No. 1541 ; he recovered the interference from an intruder, who then abandoned the possession, and McArthur afterwards cut timber on it ; all the interference was within the boundaries of 1541.   *Held,* these circumstances did not make 1541 seated so as to prevent it from passing by a sale for taxes as unseated, nor give McArthur such constructive possession as to protect him under the Statute of Limitations.

2. To make 1541 seated, there should have been an actual entry and residence upon it, or clearing and fencing it, or cultivation on it, so as to arrest the attention of the assessor.

3. The intruder's abandonment after the recovery against him, did not affect the title of the true owner of 1541.

4. The owner could be affected by such act only as would compel him to take notice of the possession of a disseisor ; this would be nothing less than actual possession within the lines of 1541, with such use of the woodland within the interference as farmers usually make of their woodland, followed by a continued notorious and visible possession for twenty-one years.

5. To be effective, the possession of the woodland must be exclusive ; cutting wood by the owner also, made it a mixed possession.

October 21st 1874.   Before AGNEW, C. J., SHARSWOOD, and MERCUR, JJ.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1873, No. 75.

This was an action of ejectment commenced July 17th 1871, by

[McArthur v. Kitchen.]

Cyrus Kitchen against William McArthur and others for 100 acres of land in Rockdale township, formerly Venango township.

The plaintiff was the owner of tract No. 1541, in the Eighth Donation district. The defendants were the owners of a tract of land immediately south of 1541, the survey of which was made in 1818, in pursuance of an improvement. The question was the location of the south line of 1541, the defendants claiming that it was about 90 perches north of where the plaintiffs alleged it to be; the improvement was south of what the plaintiff claimed to be his line. East of defendants' tract is No. 76, and east of No. 76 is No. 158; the south line of 1541 extended east is the north line of 76 and 158; the north-west corner of 158 being the north-east corner of 76 and south-west corner of plaintiffs' tract being the north-west corner of defendants' tract.

The case was tried February 3d 1873 before Lowrie, P. J.

The plaintiff gave evidence as follows:—

Official survey of the Eighth Donation district, dated October 6th 1785. Patent dated March 31st 1787, to George Tudor for tract 1541, containing 200 acres and allowance; various conveyances vesting the title of 1541 in Bernard Hubley, July 15th 1807; deed dated March 3d 1818, from Hubley's executors to Mary Hubley; assessment book of unseated land in Rockdale township containing this entry; "1865, Cyrus Kitchen 200 acres 1541;" record of treasurer's sale of 1541, July 11th 1866 to Cyrus Kitchen; deed acknowledged August 18th 1866. The plaintiff then gave evidence by the testimony of surveyors and others that the marks of the line trees beginning at a white-oak on 158 and running west on the line of 158, 76 and 1541, as claimed by plaintiff, corresponded with the date of the official survey of the Eighth Donation district; and that the lines and marks of other tracts in the Eighth district also corresponded with that survey and with the plaintiffs' claim, the south-west corner of his claim being in the middle of swamp. He gave evidence also by the opinion of all the surveyors examined by him, that the line claimed by the plaintiff was the line of the original survey of the Eighth Donation district. He gave evidence also that there was plenty of timber on the south line as claimed by the plaintiff. The surveyors examined by the plaintiff testified that the marks on the lines claimed by the defendants were of a much later date than on those claimed by the plaintiff. The plaintiff then rested.

The defendants gave evidence from surveyors, in answer to plaintiffs' evidence and tending to show that the line claimed by defendants was the true line.

They gave in evidence the draft of a survey made by James Herrington, deputy-surveyor, September 4th 1818, of the tract of defendants; the north line of this survey was where they claimed his line to be. The return of Herrington was as follows:—

[McArthur *v.* Kitchen.]

" In pursuance of William McArthur's improvement and settlement, made and continued according to law, was surveyed on the 4th of September 1818, the above-described tract of land, containing 329 acres 78 perches, situate in Venango township, Crawford county."

They gave in evidence also the survey by Herrington as deputy-surveyor of tract 76, as follows :—

" In pursuance of the Act of Assembly of 24th March 1818, on the application of John Brooks, Esq., owner of lot 76, in the Eighth District of Donation Lands, on the 22d day of January, A. D. 1830, I have run and distinctly marked the lines and re-marked the original corners, or where the corners were (some of the original trees being gone by time), of the said tract of land, according as they are on the ground, the said tract containing 383 acres and 85 perches and allowance of six per cent. for roads, &c., as described in the annexed draft of the same, situate in Rockdale township, Crawford county, and Commonwealth of Pennsylvania, and the lines as now run and stated in the said annexed draft interfere with none of the adjoining tracts, or surveys, but correspond precisely with them."

Also, patent to defendants for the land in foregoing survey ; also, patent August 10th 1854, to defendants as heirs of William McArthur, deceased, for the tract surveyed September 4th 1818 ; also, record of an action of ejectment to April Term 1856, McArthur's heirs against Jacob Welker, for 337 acres of land in Rockdale township, in which defendant, Welker, took defence for 108 acres ; verdict for the plaintiffs April 11th 1848, and possession delivered to plaintiffs in that suit, under an habere facias. Welker abandoned the possession after the determination of the ejectment against him.

W. McArthur, a defendant, testified: That in the suit with Welker they claimed to the same line as in this case ; witness first knew of the improvement in 1830–1831, of about 20 acres ; the settler's cabin was burned shortly afterwards ; a tenant in 1835 went in under a lease from plaintiffs' ancestor and remained twelve years ; there were other successive tenants until 1866 ; witness had cattle on it ; there were 20 acres cleared ; he had taken timber off it since 1830 ; witness gave Welker liberty to make shingles ; afterwards Welker cut without leave and the ejectment against him was brought ; Welker lived north of defendants' claim ; after the house was burned there had been no house there ; the house was on tract No. 76. Miller, who had tract 158, had the use of the improvement, cut timber on the disputed piece ; witness sold a large quantity of timber from the disputed piece for a railroad bridge ; and sold timber frequently after 1830 ; defendants' line was never disputed till Welker disputed it ; the defendants and one Brooks owned No. 76 together, the defendants' share was the west 113 acres. Witness always paid the taxes ; he had the land assessed as unseated for convenience of paying taxes.

[McArthur v. Kitchen.]

The defendants gave in evidence the assessment books of Rockdale township, showing tract 329 acres assessed as unseated to William McArthur's heirs from 1834 to 1870.

John Baugher testified that his father had owned the south part of 1541, had got it in 1834 from Hubley; they cut timber on it.

Defendants gave in evidence: deed dated September 20th 1825, from H. Diffenbacher and Mary his wife, late Hubley, to G. W. Hubley, for half of 1541; deed October 19th 1830, from administrator of G. W. Hubley to Betts; from Betts of same date to Brewster; mortgage March 19th 1834, John Baugher to Brewster; tax lists of 1838, 1839. Tract 1541, 100 acres assessed to Henry Diffenbacher; tract 1541, 100 acres assessed to John Baugher, sold July 25th 1840 by treasurer to J. S. Riddle.

Jacob Baugher testified that he and his father worked along the line and got out timber; they were a little over the line, about 20 rods from the swamp.

Defendants gave in evidence a judgment against Jacob Welker, under which tract 1541 was sold to H. B. Haverstick, July 1st 1854; deed May 9th 1856, Haverstick to Courtney, "Beginning at south-west corner of Kitchen's land, thence * * * to McArthur's corner, thence by land of McArthur, * * * being 15 acres on south part of tract 1541."

H. Baugher testified, that he knew of the improvement on the McArthur tract in 1829; 15 or 20 acres cleared.

R. R. Snow testified that he occupied the McArthur tract from 1854 to 1860, about 20 acres improved; 100 acres pasture land with brush fence; knew the improvement about 1815 or 1820; witness bought trees of Baugher in 1834; he showed him the line as the defendants claimed it.

A. Wilcox testified that he had had charge of defendants' tract since 1863, had taken timber off all over it since 1863; the improvement is about a quarter of a mile from the disputed part.

The defendants gave other evidence of the same character. Plaintiffs in rebuttal gave evidence that the timber for the railroad bridge was not taken from the disputed part. The plaintiff testified that in 1854 he bought from Haverstick, who measured off and agreed to warrant 212 acres; there was a surplus left; Haverstick gave him a deed for the surplus without general warranty. The deed from Haverstick to Courtney was made at plaintiff's instance, but he did not intend by the deeds to recognise the defendants' claim; the best of the timber had been taken off the disputed piece long before 1854, when he had bought; there was no fence. He let the land go to tax sale, so as to buy it in and get a title.

A. J. Fullerton testified, that he lived near the disputed piece, saw no cutting on the disputed piece; there was no fence; no one went in after Welker left.

There was other evidence by the plaintiff to the same facts.

27 P. F. Smith—5

[McArthur *v.* Kitchen.]

The following were points of the defendants with their answers :

"1. If the jury find that the defendants, by action of ejectment with Jacob Welker, in case No. 56, April Term 1846, established the line to which they now claim ; and from that time they have cleared and fenced a portion of the land within their survey and have used the whole tract to the line established by said ejectment as woodland and for obtaining timber, and have paid the taxes thereon, the possession of defendants to said line has been actual and adverse, and they now have a perfect title to the land in dispute.

"2. If at the time the taxes for the years 1864 and 1865 were assessed on tract 1541 and the sale thereof, the defendants were in actual possession of the land within their survey, with the lines thereof marked distinctly on the ground, and if the same was partly improved and under cultivation, with property thereon sufficient to pay said taxes, all the land within the defendants' survey is to be regarded in law as seated, and the tax sale passed no title to any portion of the land within the defendants' lines."

Both points were refused.

"3. If the defendants, by action of ejectment with Jacob Welker, established their claim to the land in dispute, and within their survey in 1848 ; and if they have continued to occupy the same since that time, by clearing, fencing, farming and pasturing it, and have used the timber land according to the custom of the country for obtaining wood and timber, such possession has been actual and adverse, and the land within defendants' survey and so occupied, could not be sold at treasurer's sale as unseated."

Answer : "We refuse so to charge. The use of the woodland must be in connection with the occupation."

"4. The plaintiff has shown no title to the land in dispute except such as is shown by his treasurer's deed, and if the jury finds that the defendants at the time of the assessment and sale for taxes of tract No. 1541, were in actual possession under claim of title of the land within their survey, that the possession was adverse and that a part of the land within the defendants' survey was occupied, fenced, improved and cultivated with property thereon sufficient to pay all taxes, the treasurer's sale of tract No. 1541 passed no title to any land within defendants' survey and the plaintiff cannot recover."

Answer : "This is true if the disputed land is within the defendants' patent."

The jury found for the plaintiff "according to the line that runs west from the white-oak at the north-west corner of tract No. 158, in the Donation Survey."

The defendants took a writ of error and assigned for error the answers to their points.

*W. R. Bole* (with whom was *J. J. Henderson*), for plaintiffs in

[McArthur v. Kitchen.]

error.—The tax sale to the plaintiff in 1866 passed no title to him because being interfering surveys, the defendants had always paid the taxes: Hunter v. Cochran, 3 Barr 105. Neither residence nor payment of taxes is necessary to a constructive ouster of a whole tract, part of which is cultivated under a claim of title to the whole: Kite v. Brown, 5 Barr 291. Payment of taxes by the holder of an interfering survey or by a stranger will render a sale for taxes void: Murray v. Guilford, 8 Watts 548; Dougherty v. Dickey, 4 W. & S. 151; Montgomery v. Meredith, 5 Harris 42; Harper v. McKeehan, 3 W. & S. 247. An intruder's use of woodland, as it is usually used, is actual possession of it for the purpose of the Statute of Limitations: Alden v. Grove, 6 Harris 385; Criswell v. Altemus, 7 Watts 565; Ament v. Wolf, 9 Casey 331. An entry under a bonâ fide claim of title extends the ouster and adverse possession over the whole tract claimed: Seigle v. Louderbach, 5 Barr 490; Altemus v. Long, 4 Id. 254; Susquehanna & W. V. Railroad v. Quick, 18 P. F. Smith 189; Fitch v. Mann, 8 Barr 503; Stephens v. Leach, 2 Harris 262; Green v. Kellum, 11 Harris 254; Hoey v. Furman, 1 Barr 295; Hollinshead v. Nauman, 9 Wright 140.

*P. Church,* for defendant in error, as to the Statute of Limitations, cited Hole v. Rittenhouse, 1 Wright 116; Ewing v. Alcorn, 4 Id. 492; Nearhoff v. Addleman, 7 Casey 279.

Chief Justice AGNEW delivered the opinion of the court, January 4th 1875.

A defect ran through all of the defendants' points, which necessarily called forth a negative answer from the court below. In none was an actual *pedis possessio* alleged as within the disputed territory, and in all the actual possession by clearing, fencing and cultivating, was averred only as within the defendants' survey. This was no fault of counsel, the points being drawn according to the fact as shown in the evidence, that the actual possession of the defendants was south of the boundary line of donation lot No. 1541, as claimed to by the plaintiff, and to which he recovered. The only evidence of possession by the defendants north of this line and on lot No. 1541, was that of cutting timber, and the recovery of the McArthurs against Jacob Welker in ejectment of 1846, and Welker's abandonment after the recovery, together with McArthur's subsequent taking possession by *habere facias* in 1854. The effect of this absence of an actual possession within the lines of No. 1541, was to prevent that tract from becoming seated, and also to prevent the running of the Statute of Limitations in favor of the defendants. It is very clear that the sale for taxes of donation lot No. 1541 as unseated, was not impaired by the fact that McArthur's tract was seated, unless McArthur had such an actual

possession within the lines of 1541 as would make it a seated tract also. This must be by an actual entry upon No. 1541 and residing upon it, or by clearing and fencing it, or by cultivation upon it, so as to arrest the attention of the assessor and require him to return the tract as seated. There was not in this case even a slight clearing over to bring into play the doctrine of accidental trespass, or the curative provision of the Act of 12th April 1842, 1 Bright. Purd. 1443, pl. 7.

The sale of No. 1541 for taxes, and the defence under the Statute of Limitations, both imply that the land in controversy lay within the true southern boundary of 1541. For if it were not so, McArthur would hold the interference by virtue of his own better title. The jury have found that the true boundary of 1541 includes the interference as claimed by the plaintiff. Hence the sale for taxes gave a good title to the plaintiff, Cyrus Kitchen.

How, then, stood the case under the Statute of Limitations ? The recovery of the land within the interfering surveys by the McArthurs against Jacob Welker in the ejectment of 1846, with the abandonment of it by Welker after the recovery, would have been a strong fact in the case, had it appeared that Welker was the owner of donation lot No. 1541. Then a recovery against the owner of 1541 might plausibly be argued to confer a legal seisin, which, followed by the payment of taxes and cutting of timber, would be evidence of an ouster of the owner of 1541 from the interference, without taking an actual *pedis possessio* within the same. But there was no evidence of Welker's ownership of that part of 1541, and his abandonment of possession after the recovery in ejectment, would in no wise affect the true owner of 1541, who was no party to the proceeding, and had done no act to amount to a confession of ouster. He could be affected by such act only as would in any case compel him to take notice of the possession of a disseisor. This would be nothing less than an actual possession within the lines of his tract, accompanied with such use of the woodland within the interference as farmers usually make of their own woodland, followed by a continued notorious and visible possession, undisturbed by him for twenty-one years. That there must be an actual or *pedis possessio* within the interference, to give title under the Statute of Limitations, was settled finally in the case of Hole *v.* Rittenhouse, 1 Casey 491, reaffirmed in Hole *v.* Rittenhouse, 1 Wright 116. The same doctrine was asserted in Ament's Ex. *v.* Wolf, 9 Casey 331, and repeated in Ewing *v.* Alcorn, 4 Wright 492 ; O' Hara *v.* Richardson, 10 Wright 386, and in subsequent cases. This is now conceded the settled doctrine, and certainly is the only one just to both parties. The learned judge below doubtless decided this case in recollection of his own opinion in Ament's Ex. *v.* Wolf, *supra.* Yet the language of Woodward, J., in the second opinion in the same case, is now relied upon to give effect to a doctrine as to the

[McArthur *v.* Kitchen.]

constructive possession of the woodland in this case, unsupported by the facts of that case or of any other known to me.   But strong as was the language of Justice Woodward in that opinion to support the possession of the woodland as an actual possession, when aided by such acts of ownership over it as farmers usually exercise over their own woodland, his entire argument is founded on the actual possession of five acres cleared, cultivated and occupied by the disseisor within the interference.   Without that nucleus around which such acts as the occasional cutting of timber could gather, and constitute a part of the actual possession, the argument would be nothing less than a piece of intellectual magic, to convert the merest constructive possession of woodland into a seeming *pedis possessio ;* but that the learned judge never taught such a doctrine, is conclusively proved by his opinion in the second case of Hole *v.* Rittenhouse, 1 Wright 116.   It is true that Ament's Executors *v.* Wolf, did decide a new point under the Statute of Limitations, but it was not that there is an actual possession of woodland, unattended by any visible act of clearing, fencing, cultivating or residing.   Previous cases had decided only this, that the constructive possession of woodland when fastened upon an actual possession by clearing, fencing or cultivating within the interference, would take place only when the owner of the survey interfered with was not in possession within his survey.   In Ament's Executor *v.* Wolf, it was stoutly contended that when both owners are in actual possession of their respective tracts, the law casts the possession of the woodland within the interference upon the true owner of the survey.   But it was there held against the dissent of Justice Thompson, that an *actual possession* within the interference, accompanied by an exclusive use of the unenclosed woodland, such as is customary among farmers, uninterrupted by any act of the true owner of the survey, is evidence from which an ouster of the true owner from the woodland will be inferred so as to give effect to the Statute of Limitations.   Justice Woodward calls this possession of the woodland an *actual* possession.   But be it actual or only constructive, the legal effect is precisely the same.   To be effective, this possession of woodland must be exclusive, as was then held and also subsequently shown: O'Hara *v.* Richardson, *supra.*   For if the owner of the true survey also cut timber within the interference, it becomes a case of mixed possession at least, and there is no room for Justice Woodward's illustration from a law of natural philosophy, that two magnitudes cannot at the same time occupy the space.

The changes in the doctrine of possession of unenclosed woodland under the Statute of Limitations, within the last half century, are interesting and instructive.   The great body of western lands was held by eastern capitalists, chiefly citizens of Philadelphia. Miller *v.* Shaw, 7 S. & R. 129, decided in 1821, settled in the most

[McArthur *v.* Kitchen.]

absolute terms that under no pretence could a settler on purchased lands obtain title by the statute beyond his actual possession so held for twenty-one years. C. J. Tilghman opened his opinion with a reference to these purchased lands, which he called "Our Back Lands." The principle of that decision is found in the first sentence of Justice Gibson's opinion: "It is a well-established principle (he says) both in England and our sister states, that there can be *no constructive* possession in favor of a *wrongdoer*." Having practised under the law of that case, I remember well the hard fate of the early settlers, who by its operation were cut off from their valuable improvements and confined to the small field, often two, three or four acres, which had been cleared twenty-one years.

Royer *v.* Benlow, 10 S. & R. 303, decided in 1823, maintained the docrine of Miller *v.* Shaw, reversing the court below for asserting the doctrine of the constructive possession of the woodland, which is now regarded as settled law. But in that case, Chief Justice Tilghman conceded in argument that there might be a confession of ouster by the owner himself through his act, which would thereby extend the possession of the trespasser constructively. This was the root from which a later doctrine sprang, after the death of Chief Justice Tilghman and Justice Duncan, and when Huston and Kennedy were seated on the new bench as judges. McCall *v.* Neeley, 3 Watts 69, decided in 1834, was the first well matured fruit of this root in Royer. *v.* Benlow. It was a case where the disseisor entered on the whole tract, claiming by its boundaries and paying taxes for the whole, the owner suffering this to be done for twenty-one years. The same doctrine was reaffirmed in Criswell *v.* Altemus, 7 Watts 566, decided in 1838. In the next year, a further step was taken in Lawrence *v.* Hunter, 9 Watts 64, taken up and argued by myself, in which it was held that an official survey procured by the settler, to be made by the deputy surveyor under the Act of 3d April 1792, of a *part* of a warranted tract was efficacious to extend the settler's possession by construction to the lines of his survey. After this case, the doctrine of constructive possession continued to advance in favor until it ran wild in Waggoner *v.* Hastings, 5 Barr 300; Seigle *v.* Louderbach, 5 Barr 490, and Kite *v.* Brown, 5 Barr 291, which were overruled in Hole *v.* Rittenhouse, 1 Casey 491. In his opinion in this case, Chief Justice Lewis seeks to qualify rather than overrule Kite *v.* Brown. Yet in its principle, as to the constructive possession, it is clearly overruled.

As to a mere interference of surveys, the first case in which the doctrine of constructive possession of the unenclosed woodland was clearly and effectively applied, was Thompson *v.* Milford, 7 Watts 442, the principle of which is now the law as settled in numerous cases. In O'Hara *v.* Richardson, already referred to, both parties

[*McArthur v. Kitchen.*]

were in possession of their respective tracts, and the peculiarity was that each entered and cut timber within the interference. Hence, though the owner of the junior survey was in actual possession of part of the interference, it was held that the entry of the owner of the elder survey and cutting of timber, were acts of ownership, preventing such a constructive possession of the unenclosed woodland as would be a constructive ouster of the true owner to give title under the Statute of Limitations.

As a result of the cases we think the formal act or taking possession of the land under the ejectment against Welker, a stranger to the title of 1541, and the subsequent entries to cut timber within the interference, unaccompanied by any ostensible possession, neither seated donation lot No. 1541, nor conferred a constructive possession upon the McArthurs within the interference, such as would protect them under the Statute of Limitations.

The judgment is therefore affirmed.