576 A.2d 1114

The **ARCADIA COMPANY, INC.**, a
**Pennsylvania Corporation**

v.

**Peter P. PELES, Jr. and Carol D. Peles his**
**Wife, Appellants.**

Superior Court of Pennsylvania.

Argued March 29, 1990.

Decided June 19, 1990.

205

---

John A. Hanna, Indiana, for appellants.

Beverly A. Gazza, Indiana, for appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a judgment entered following a bench trial in which plaintiff/appellee, Arcadia Company, Inc. ("Arcadia") was granted relief in an action in ejectment brought against defendants/appellants, Peter P. Peles, Jr. and Carol D. Peles ("the Peleses"). For the reasons set forth below, we affirm.

The record reveals that Arcadia purchased a four hundred sixty (460) acre tract of land located in Indiana County from the heirs of Asa White in 1980. However, appellants contend that they have title to and own a portion of the land claimed by Arcadia. Specifically, appellants claim ownership of thirty-three and sixty-one one-hundredths (33.61) acres of land located partially in Banks and partially in Montgomery Townships. As a result of the ownership dispute, appellants filed an action to quiet title. On July 11, 1988, Arcadia responded by instituting an action in ejectment and filing a petition for intervention in the quiet title proceeding. The two causes of action were consolidated for trial by order dated March 1, 1989.

At a bench trial held April 26, 1989, Arcadia presented evidence of a chain of title establishing record ownership to that portion of the land in question which is located in Banks Township (hereinafter the "disputed premises"). Arcadia also offered evidence to establish record ownership to the larger tract of land in Banks Township of which the disputed premises is a part. The Peleses countered by introducing evidence that their predecessor in title acquired the relatively small portion of the 33.61–acre tract located in Montgomery Township at a tax sale in 1965. Arcadia does not, however, claim ownership of any land in Montgomery Township. The Peleses argue that they acquired the disputed premises because they have continually utilized the entirety of the 33.61–acre tract, of which the disputed premises is a part, for twenty-nine (29) years, in a manner consistent with a claim to title by adverse possession.

■ On June 28, 1989, the lower court ruled that Arcadia is the owner of the disputed premises in Banks Township. Specifically, the lower court found that the Peleses failed to demonstrate that they openly and notoriously possessed the disputed premises for the requisite term of years. The Peleses' exceptions to the decree nisi were denied on August 1, 1989. No praecipe for entry of judgment in favor of Arcadia and against the Peleses was docketed until October 18, 1989. The Peleses did, however, file a notice of appeal on August 30, 1989. We note that an appeal is more properly taken after a decree nisi has been reduced to judgment as required by Pa. R.A.P., Rule 301, 42 Pa. C.S.A. Nevertheless, a case in which the notice of appeal was filed prior to the entry of judgment is still validly before the appellate court. *See* Pa. R.A.P., Rule 905(a), 42 Pa. C.S.A. *See also McCormick v. Northeastern Bank of Pennsylvania*, 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989) (*quoting Commonwealth v. Allen*, 278 Pa.Super. 501, 504–05 n. 3, 420 A.2d 653, 654 n. 3 (1980), "in the interests of judicial economy, we shall 'regard as done that which ought to have been done' ").

■ The case *sub judice* raises four issues for our review: (1) whether the lower court erred in finding that the Peleses did not acquire title to the disputed premises by adverse possession; (2) whether the Peleses and their predecessors in possession obtained legal title to the disputed premises through the payment of taxes on the whole of the contested tract of land and by using the entire area in question through the prescriptive period; (3) whether the Peleses and their predecessors in possession acquired constructive possession of the disputed premises under the legal doctrine of "color of title"; and (4) whether adverse possession of the surface for twenty-one (21) years will confer title to the underlying coal reserves where the mineral estate has not been severed from the surface estate. We note initially that the factual findings of a trial judge sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error

of law or abuse of discretion. *Pato v. Cernuska,* 342 Pa.Super. 609, 612, 493 A.2d 758, 759 (1985). We must accept the findings of the court below with respect to the credibility of witnesses. *Bigham v. Wenschhof,* 295 Pa.Super. 146, 149, 441 A.2d 391, 392 (1982).

Appellants first contend that they acquired title to the disputed premises in Banks Township through adverse possession. Mindful of the standard of review set forth above, we have scrutinized the parties' briefs and the record on appeal. Finding that the lower court's discussion and resolution of the argument concerning appellant's first claim is both clear and concise, we affirm with regard to this issue on the basis of the lower court opinion filed June 28, 1989.

■ Next, appellants argue that through a different form of adverse possession, they and their predecessors in possession obtained legal title to the entire 33.61–acre tract through the payment of taxes, and through their occupation and use of parts of the disputed premises during the prescriptive period. In support of this claim, appellants cite *Criswell v. Altemus,* 7 Watts 565 (1838), as well as several other cases from the mid–1800's,[1] for the following proposition: an intruder may enter an unseated tract of land without color of title, and work a disseisin so as to ultimately vest possession of and title to the entire tract in himself. This is accomplished by exercising such acts of ownership as erecting buildings, occupying the land and improving parts of the tract, coupled with paying the taxes assessed on the *entire* tract for a period of twenty-one years. *Id.* at 580. *McCaffrey v. Fisher,* 4 Watts & Serg. 181, 182 (1842) imposes the additional requirement that the taxes must be paid with the acquiescence of the owner of record. While we agree with appellants' interpretation of *Criswell* and its progeny, we find that the record does not provide verifica-

1. *See McArthur, et al. v. Kitchen,* 77 Pa. 62, 70 (1874); *Baker v. Findley,* 20 Pa. 163, 169 (1852); *Fitch v. Mann,* 8 Pa. 503, 507 (1848); *Bishop v. Lee,* 3 Pa. 214, 216 (1846); *McCaffrey v. Fisher,* 4 Watts & Serg. 181, 182 (1842).

tion for appellants' factual allegations in support of their claim to the disputed premises.

The record indicates that Indiana County Tax Assessment No. 35–15–111 is the designation for the entire four hundred sixty (460) acre tract located in Banks Township of which the disputed premises is a part. N.T. 4/26/89 at 28–29. This is the property to which Arcadia holds legal title of record. The forty-seven (47) acres in Montgomery Township which the Peleses' predecessor in interest acquired by tax sale is identified by a different tax assessment number. *Id.* at 29. From 1967 until 1984, no part of the disputed premises was ever assessed to appellants or to their predecessors in title, *id.* at 39, and it was the understanding of the Indiana County Tax Assessment Office that the northern boundary of the Peleses' property was congruent with the Banks Township line. *Id.* at 48. In 1984, however, the tax assessment map was changed so that the disputed premises may have been taxed to both the Peleses and to Arcadia. *Id.* at 36–39.

Although the record thus contains some support for appellant's contentions that they have paid taxes on the disputed premises, appellants have provided no documentation that such taxes were paid on the *entire* disputed premises for the requisite twenty-one (21) year period. Even if appellants did pay taxes on the disputed premises, they have failed to demonstrate that they did so with the acquiescence of Arcadia. Testimony indicated that Arcadia would not have been given notice of the change in the tax records that occurred in 1984. *Id.* at 39. Further, appellants have introduced no evidence showing that Arcadia ceased at any time to pay the taxes on the disputed premises and permitted appellants to shoulder this burden in their stead. Consequently, we cannot find that appellants have acquired title to the land in Banks Township under the rule set forth in *Criswell v. Altemus* and *McCaffrey v. Fisher*, *supra*.

The third claim raised by appellants is that they and their predecessors in possession acquired "constructive

possession" of the entire disputed premises under the legal doctrine of "color of title." An entry is by "color of title" when it is made under a bona fide, and not pretended, claim to title which actually exists in another. *Dice v. Reese*, 342 Pa. 379, 382, 21 A.2d 89, 91 (1941). "Color of title" is merely the appearance of title without its reality, saving its possessor only from the imputation of being a naked trespasser. *Id.* Although it contributes nothing to the fiber of title as affecting the adverse character of possession, *id.*, a disseisor who enters upon and cultivates part of a tract for the limitations period (*i.e.*, for twenty-one years), may thereby hold constructive possession of the whole tract if his entry was by color of title. *Ege v. Medlar*, 82 Pa. 86, 99 (1876).

Our law is clear, however, that the possession of one who has a colorable title is co-extensive with the boundaries of the instrument under which he claims only in the absence of any actual possession by the true owner. *Cluggage v. Duncan*, 1 Serg. & Rawle 111, 118 (1844). In a case where both parties claim to be seised of the same parcel of land,

> [and where one party] enters upon unoccupied land, under a deed or title, and holds adversely, his possession is construed to be coextensive with his deed or title, and the true owner will be deemed to be disseised to the extent of the boundaries described in that title. Still, his possession beyond the limits of his actual occupancy is only constructive. If the true owner be at the same time in actual possession of part of the land, claiming title to the whole, he has the constructive possession of all the land not in the actual possession of the intruder, and this though the owner's actual possession is not within the limits of the defective title.

*Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 159–60, 360 A.2d 209, 213–14 (1976), *quoting Hunnicutt v. Peyton*, 102 U.S. 333, 368, 26 L.Ed. 113 (1880).

Despite their contentions to the contrary, the record clearly indicates that appellants never obtained color of title

to the disputed premises. The 1965 tax deed on which appellants rely for their assertion of color of title applies only to land situated in Montgomery Township. The disputed premises is located in Banks Township and is simply not included under the Peleses' tax deed. The record shows that there is some confusion as to whether the deed executed in 1984 conveying land to the appellants from Margaret Peles included the disputed premises. However, appellants have not been in possession of this land for the requisite twenty-one year period.

While appellants have produced no evidence demonstrating that the disputed premises was ever out of Arcadia's possession within the meaning of the caselaw cited above, Arcadia has made an ample showing to refute appellants' contentions in this regard. Between 1972 and 1977, Arcadia collected tonnage royalties from several different coal companies which were authorized either to mine coal on the disputed premises, or to haul coal across the land. N.T. 4/26/89 at 69–70. In 1982, Consolidated Gas Company paid Arcadia for a right-of-way across the property in question. *Id.* at 69. Arcadia produced a survey at the trial showing that the pipeline crossed the disputed premises. *Id.* at 70.

Appellants have thus failed to substantiate their claim to constructive possession under color of title. As appellants have not succeeded in demonstrating their right to title by adverse possession under any of the three theories raised in this appeal, we need not address their fourth contention to determine whether they acquired the mineral rights to the disputed premises by adverse possession.

The judgment entered October 18, 1989 is affirmed.