Joseph N. **BRENNAN** and Rosemary A. Brennan, Appellants,

v.

**MANCHESTER CROSSINGS, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1997.

Filed Feb. 25, 1998.

Reargument Denied April 28, 1998.

---

Michael W. Flannelly, York, for appellants.

Albert G. Blakely, York, for appellee.

Before McEWEN, President Judge, and POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment entered in the Court of Common Pleas of York County on July 28, 1997, by which the lower court denied the relief requested in appellants' quiet title action against appellee. Herein, appellants alleged that they are entitled to legal ownership by adverse possession of a small parcel of land which adjoins their property. Upon review of the record, the parties' briefs and the applicable law, we find that the lower court erred when it determined that appellants failed to prove their adverse possession claim. Accordingly, we reverse and remand for proceedings in accordance with the provisions of this opinion.

Herein, appellants raise six assertions of error:

1. Whether the trial court erred in finding that the activities of [appellants] did not constitute "hostility" and whether the trial court erred in requiring [appellants] to establish "hostility" when it should have been presumed.

2. Whether the trial court erred in ruling that the Bryants' (former legal owners [of the property in question]) lack of stated objection to the [appellants'] use of the property in question implied consent on the part of the Bryants to [appellants'] use of the property.

3. Whether the trial court erred in permitting Eloise deLaski to testify by telephone on behalf of [appellee] over the objection of [appellants'] trial counsel.[1]

4. Whether the trial court erred in relying upon the testimony of Donald Resh concerning his establishment of the physical boundaries of the property when there was no testimony indicating that [appellants] were even aware of Resh's activities and that [appellants] did not change their use of the property in response to Resh's alleged activities.

5. Whether the trial court erred in ruling that the fence on the property was unusable and, therefore, constituted evidence that [appellants] did not desire to establish dominion over the property.

6. Whether the trial court erred in ruling that adverse possession was not established in light of the uncontroverted evidence presented by [appellants] as to [appellants'] activities on the property.

Appellants' Brief, pp. 1–2.

The case of *Glenn v. Shuey*, 407 Pa.Super. 213, 595 A.2d 606 (1991) thoroughly sets forth the standard of review to be applied today and the substantive law of adverse possession, as follows:

At the outset, we note that "the factual findings of a trial court sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion." *Arcadia Co., Inc. v. Peles*, 395 Pa.Super. 203, 207–208, 576 A.2d 1114, 1116 (1990) (citing *Pato v. Cernuska*, 342 Pa.Super. 609, 612, 493 A.2d 758, 759 (1985)); *see also Bigham v. Wenschhof*, 295 Pa.Super. 146, 148, 441 A.2d 391, 392 (1982).

It is well settled that a party claiming title to real property by adverse possession must affirmatively prove that he or she had "actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years." *Conneaut Lake Park, Inc. v. Klingensmith*, 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949) (citing *Parks v. Pennsylvania R.R. Co.*, 301 Pa. 475, 152 A. 682 (1930)); *see also Klos v. Molenda*, 355 Pa.Super. 399, 513 A.2d 490 (1986); *Tioga Coal Co. v. Supermarkets General Corp.*, 289 Pa.Super. 344, 433 A.2d 483 (1981), *alloc. denied*, 500 Pa. 555, 458 A.2d 1355 (1983). Each of these elements must exist, otherwise the possession will not confer title. *Conneaut Lake*, 362 Pa. at 594–595, 66 A.2d at 829. "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts ... He must keep his flag flying and present a hostile front to all adverse pretensions." *Klos*, 355 Pa.Super. at 403, 513 A.2d at 492 (citations and quotations omitted).

Broadly speaking, "actual possession" of land is dominion over the land; it is not equivalent to occupancy. *Reed v. Wolyniec*, 323 Pa.Super. 550, 471 A.2d 80 (1983); *Burns v. Mitchell*, 252 Pa.Super. 257, 381 A.2d 487 (1977) (en banc) (plaintiff who had occupied defendant's land and maintained lawn up to fence for more than 21 years established title by adverse possession); C.J.S., Adverse Possession §§ 30,

---

1. Given our resolution of this case, we find that we need not address this issue. Even if we were to address the merits of this issue, we would find the issue to be waived. Although appellants objected to the introduction of Mrs. deLaski's testimony via telephone conference, appellants ex-

pressly did so on the grounds that "we don't know that it's Mrs. deLaski who is giving the answers." N.T., p. 78. Later, during Mrs. deLaski's testimony, appellants' counsel specifically stated that he was satisfied that the person on the telephone was, in fact, Mrs. deLaski. N.T., p. 87.

42. There is no fixed rule, however, by which the actual possession of real property by an adverse claimant may be determined in all cases. 3 Am.Jur.2d § 18, at 109. The determination of what constitutes actual possession of property for purposes of adverse possession depends on the facts of each case, and to a large extent on the character of the premises. *Id.*[5]

The words "visible and notorious possession," as applied to the adverse holding of land by a party without color of title, mean that the claim of ownership must be evidenced by conduct sufficient to place a reasonable person on notice that his or her land is being held by the claimant as his own. *Sterner v. Freed*, 391 Pa.Super. 254, 570 A.2d 1079 (1990) (plaintiff's use of defendant's driveway notorious for 26 year period and therefore sufficient to establish prescriptive easement); 3 Am.Jur.2d § 69, at 165–166.

To constitute distinct and exclusive possession for purposes of establishing title to real property by adverse possession, the claimant's possession need not be absolutely exclusive. *Reed, supra.* Rather, it need only be a type of possession which would characterize an owner's use. For example, in *Reed,* the appellees, Robert and Audrey Reed, asserted title by adverse possession to a lot adjacent to their residence. The Reeds had maintained the lot by cutting the law and by planting and maintaining thereon various shrubbery and flowering plants. In affirming the trial court's determination that the Reeds had established title to the lot by adverse possession, Judge Wieand, writing for a unanimous court, opined:

> Thus, the exclusive character of appellees' [the Reeds] possession was not destroyed because other persons occasionally passed unobserved over the lot. It was enough that appellees' possession was to the general exclusion of others and that they remonstrated with persons who attempted, without permission, to use the land.

*Reed,* 323 Pa.Super. at 556, 471 A.2d at 84 (citations omitted); *see also Pistner Bros., Inc. v. Agheli,* 359 Pa.Super. 177, 518 A.2d

838 (1986) (subdivision lot owner's action in planting grass on abutting, undedicated street held insufficient to establish interference with use of street for purposes of adverse possession where others able to use street for its intended purpose); *Lyons v. Andrews,* 226 Pa.Super. 351, 313 A.2d 313 (1973).

The word "hostile," as an element of adverse possession does not mean "ill will" or "hostility," but implies an assertion of ownership rights adverse to that of the true owner and all others. *Schlagel v. Lombardi,* 337 Pa.Super. 83, 486 A.2d 491 (1984) (citing *Vlachos v. Witherow,* 383 Pa. 174, 118 A.2d 174 (1955)); *see also Jones v. Porter,* 3 P. & W. 132 (1831) (party who attempted to establish adverse possession was not required to show that he had entered the land and held it in direct hostility to other claimants). Simply stated, the possession must be "such as to import a denial of the owner's title." 3 Am.Jur.2d § 50, at 143–144. *Cf. Gee v. CBS, Inc.,* 471 F.Supp. 600, 655–658 (E.D.Pa.), *aff'd,* 612 F.2d 572 (3rd.Cir.1979) (in context of suit by recording artist against record company to recover property rights in recording, requirement of hostility for adverse possession meant that record owner of song did not consent to claimant's possession). Furthermore, if all of the elements of adverse possession are established, the element of hostility is implied. *Schlagel, supra.*

Finally, in order for adverse possession to ripen into title, it is necessary that such possession had been continuous and uninterrupted for the full statutory period. *Tioga Coal, supra; Elias v. Scott,* 164 Pa.Super. 329, 64 A.2d 508 (1949). In this Commonwealth, as in most jurisdictions, the statutory period is twenty-one years. *See* 42 Pa.C.S. § 5530(a)(1), *supra* note 3; *Conneaut Lake, supra; Klos, supra.* The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day. *See Reed, supra* (single twenty-four hour attempt by record owner to interrupt claimant's possession did not destroy continuity of adverse possession). A temporary break or interruption, not of unrea-

sonable duration, does not destroy the continuity of the adverse claimant's possession. *Id.*

5. There may be actual possession of real property under an infinite variety of circumstances. For example, actual possession may be established in connection with a residence. *Klos v. Molenda,* 355 Pa.Super. 399, 513 A.2d 490 (1986) (adverse possessors continuously maintained strip of law in connection with their residence), by virtue of the claimant's cultivation of the land, *M'Caffrey v. Fisher,* 4 Watts & Serg. 181, 182 (1842) (intruder acquired title to portion of property by cultivating property for a period or 21 years); *Schoen v. VanHart,* 29 Pa.D. & C.3d 616 (1983) (possessor, who, although occupying parcel of property without title, acquired parcel by adverse possession where he cultivated a specific variety of trees for 21 years and enclosed the subject parcel); *Heacock v. Rawn,* 93 Montg. 239, 240 (1970) (cultivation of unimproved land constitutes "actual possession" of property); 3 Am.Jur.2d §§ 30–33, at 119–122, by enclosure of lands, *Robin v. Brown,* 308 Pa. 123, 162 A. 161 (1932) (dictum) (enclosure of property by fence can be sufficient to establish title to property by adverse possession but only if fence is continuously and substantially maintained for 21 years so that it constitutes an assertion "against the world" of claimant's ownership); *Schoen, supra,* or by making improvements on the property and paying the property taxes. *McCall v. Neely,* 3 Watts 69 (1834) (party who, without color of title, entered land, cleared trees, made improvements and paid taxes on entire tract for 21 years vested title to the tract in himself). *Cf. Criswell v. Altemus,* 7 Watts 565, 579–580 (1838) (trial court erred in instructing jury that defendant could not establish an ouster of plaintiff from property where defendant showed that he entered plaintiff's land without color of title, claimed the land as his own, erected buildings, cultivated the land and paid the property taxes for more than 21 years); *see also* 3 Am.Jur.2d § 34 (pasturing or grazing of lands sufficient to constitute possession necessary for establishing titled by adverse possession); *Id.* at § 35 (cutting of timber sufficient to establish dominion over property); *Id.* § 38 (adverse possession evidenced by combination of using land for grazing, cultivation, gathering natural crops and removal of timber).

*Glenn,* 595 A.2d at 610–612.

Presently, the lower court made the following findings of fact:

1. On August 18, 1960, Richard S. Bryant and Lillian M. Bryant, his wife (hereafter referred to as Bryants) purchased and received title to a large tract of real estate, which included a farmhouse and farm land from Harry A. Stiles and Ada V. Stiles, his wife. The deed conveying said real estate was recorded in the Office of the Recorder of Deeds of York County, Pennsylvania, in Record Book 50–D, page 97.

2. On June 30, 1967, Bryants conveyed a minor portion of the tract of real estate, purchased in Paragraph 1 herein, on which the farmhouse was located, to Albert J. Arnsberger, Jr. and Kathryn M. Arnsberger, his wife. The deed conveying said real estate was recorded in the Office of the Recorder of Deeds for York County, Pennsylvania, in Record Book 60–H, page 1102.

3. On April 27, 1973, Albert Arnsberger, Jr. and Kathryn M. Arnsberger, his wife conveyed title to the tract of real estate purchased as set forth in Paragraph 2 hereof, to [appellants]. The deed conveying said real estate was recorded in the Office of the Recorder of Deeds of York County, Pennsylvania, in Record Book 66–M, page 887.

4. On July 20, 1978, Richard S. Bryant and Lillian M. Bryant, his wife, conveyed title to the remaining real estate, adjoining the real estate sold by the Bryants, as set forth in Paragraph 2 hereof and purchased by [appellants] in Paragraph 3 hereof, to Manhaven Associates, a limited Maryland partnership. The deed conveying said real estate was recorded in the Office of the Recorder of Deeds of York County, Pennsylvania, in Record Book 77–U, back of page 197.

5. On September 22, 1993, Manhaven Associates conveyed the real estate set forth in Paragraph 4 hereof to [appellee]. The deed conveying said real estate was recorded in the Office of the Recorder of Deeds of York County, Pennsylvania, in Record Book 723, page 1073.

6. Shortly after purchasing the real estate set forth in Paragraph 3 hereof, [appellants] began to reside in the farmhouse situate on said tract of real estate.

7. The real estate which [appellants] purchased and resided on, prior to the transfer of title on June 30, 1967, had been a part of the larger tract of real estate presently owned by [appellee], that adjoining tract had been used as farm land and

was not occupied by the individual who owned that real estate, for residential purposes.

8. Shortly after beginning residence on the real estate they had purchased, [appellant], Joseph N. Brennan, began to mow the grass over the disputed area of the real estate adjoining their real estate.

9. While Bryants were familiar with [appellant] mowing the grass and perhaps trimming of some bushes and trees and hedges, raking leaves in the autumn and perhaps parking cars on the disputed property, this area was part of their larger tract of real estate not being used for residential purposes; and, as a result, they did not object to [appellant] mowing the grass and his actions during the period would have given the impression to [appellants] that he consented to their mowing the grass and other minor activities. Also, at the settlement, when Bryant sold the adjoining land to Manhaven Associates, Richard S. Bryant stated that the disputed area was being mowed by the Plaintiffs, but left the purchasers under the impression that it was being mowed with his permission.

10. [Appellants] never fenced in nor secured in any way the parameter of the claimed tract of land, nor changed the existing use of the property by planting trees or flowers or building any structures, except for some minor berm improvements to control water flow into their titled property. Further, an existing fence which was located on the claimed tract of land was not maintained and finally became rotted and not usable as a fence.

11. In 1976, Donald W. Resh, P.E., and Civil Engineer, employed by C.S. Davidson, Inc., while preparing a subdivision plan for the disputed real estate along with the adjoining real estate, went around the disputed area to establish the boundary lines of [appellants'] property as set forth in the deed set forth in Paragraphs 2 and 3. [Appellants] were residing in the residence adjoining the disputed area at that time and made no objections nor gave any adverse information to Donald W. Resh, P.E.

12. The period of time between title being granted to [appellants] and the filing of the Complaint on August 2, 1994, is slightly over twenty-one years.

13. The period of time between the last day of ownership of the adjoining real estate by Bryant, which was July 20, 1978, until the present date is less than twenty-one years.

Trial Court Opinion, filed May 20, 1997, pp. 2–3.[2]

The record demonstrates that appellants claim by adverse possession a tract of land which is the same width as their residential lot and which extends sixty feet to the south. This tract represents the land between a now-overgrown, gravel driveway and appellants' lot.

Based upon those findings of fact, the lower court concluded that the Bryants had "implied" their consent to appellants' use of the property in dispute. See Trial Court Opinion, filed May 20, 1997, p. 4. Further, the lower court determined that appellants' use of the property "was not sufficiently hostile to establish notice to [the Bryants] of adverse possession." See Adjudication and Decree Nisi, filed February 6, 1997, p. 6. Given the court's determination that appellants occupied the land in question with the Bryants' consent until 1978, when the Bryants sold the land, the court held that appellants could not establish adverse possession of the land for the requisite 21 years. See Adjudication and Decree Nisi, filed February 6, 1997, p. 6. Upon review of the record and the applicable law, however, we cannot agree with the determination of the court below. We are convinced that appellants proved that they had

2. The lower court, in paragraph 10 of its findings of fact, stated: "Further, an existing fence which was located on the claimed tract of land was not maintained and finally became rotted and not usable as a fence." This finding is not supported by the record which reveals that the fence was *not* situated on the land in dispute. Rather, the fence was located to the south of the tract claimed by adverse possession. N.T., p. 19. To the extent that the lower court relied upon the appellants' failure to maintain the fence in determining that appellants failed to prove their adverse possession claim, we find the court erred.

"actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Glenn*, 595 A.2d at 610, quoting *Conneaut Lake Park*, 66 A.2d at 829.

First, the record clearly establishes that appellants had "actual possession" of the land in dispute, i.e., exercised dominion over the property, from shortly after their purchase of their residence on April 27, 1973, through the filing of this quiet title action on July 6, 1994, more than twenty-one years later. Second, appellants' possession was continuous for more than twenty-one years. Testimony from all of the witnesses at trial indicated that appellants had maintained a lawn on the disputed property since shortly after they purchased their residence in April of 1973. *See Klos, supra* (adverse possessors had "actual possession" of thirty inch strip of grass adjacent to their residential property); *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 360 A.2d 209 (1976) (use of disputed land along boundary as a lawn in connection with residence of adverse possessor for more than twenty-one years is sufficient to establish title).

Third, we find that appellants' possession of the lawn area adjacent to their property was "visible and notorious." To establish visible and notorious possession, appellants were required to prove that their conduct was sufficient to place a reasonable person on notice that his land is being held by appellants as their own. *Glenn*, 595 A.2d at 611, citing *Sterner, supra*. Presently, the record reveals that all record owners of the disputed tract were aware that appellants were maintaining the tract adjacent to their property as a lawn. Appellants seeded the area, fertilized the grass, mowed the grass at the same height as their residence's lawn, and raked leaves from the area. The land simply appeared to be an extension of appellants' own lawn, with farm fields surrounding the combined tracts. In addition to maintaining the lawn, the Bryants knew appellants used the tract for recreational activities, parking vehicles, storing firewood and a log splitter. Appellants also installed and maintained a berm to control water run-off on the property. Such activities were sufficient to

place the true titleholders on notice that appellants claimed the land as their own. In numerous cases, we have held that similar activities are sufficient to establish adverse possession. *See, Klos*, 513 A.2d at 492 ("The use of land for lawn purposes and the continuous maintenance thereof in connection with a residence, it has been held, are sufficient to establish adverse possession [;]" maintenance of thirty inch strip of lawn for more than twenty-one years sufficient to establish adverse possession claim to strip of grass.); *Reed, supra* (maintaining lawn, planting flowers and shrubs, erecting bird house, and using the land for recreational purposes for more than twenty-one years sufficient to establish adverse possession claim); *Inn Le'Daerda*, 360 A.2d at 218 (Dixon and Phillips had established adverse possession claims to their respective lots by maintaining lawns over the disputed tracts for in excess of twenty-one years); *Ewing v. Dauphin County Tax Claim Bureau*, 31 Pa.Cmwlth. 285, 375 A.2d 1373 (1977) (almost uninterrupted care of disputed property as a lawn from 1945 until 1976, was sufficient to establish adverse possession); *Lyons v. Andrews*, 226 Pa.Super. 351, 313 A.2d 313, 317 (1973) (maintenance of lawn sufficient to give notice to true title holder of adverse possessor's intent to claim property as his own).

Fourth, to constitute distinct and exclusive possession, appellants must demonstrate that their possession was the type that "would characterize an owner's use." *Glenn*, 595 A.2d at 611, citing *Reed, supra*. Herein, appellants' possession of the disputed tract was just such. Appellants maintained and used the property as if it was their own. For more than twenty-one years, they planted grass seed, fertilized, mowed the grass, and stored firewood, a log-splitter and vehicles on the property, in addition to using the property for recreational activities. Throughout that same period, none of the record owners used or maintained the property in any manner. Thus, appellants have satisfied their burden of proof as to this element. *Compare Reed, supra; Inn Le'Daerda, supra; Ewing, supra; Lyons, supra; with Pistner Bros., Inc. v. Agheli*, 359 Pa.Super. 177, 518 A.2d 838 (1986) (subdivision lot owner's action in planting grass on abutting, undedicated

street was insufficient to prove adverse possession claim where other persons in the subdivision were still able to use the street for its intended purposes).

While, as previously cited, there are numerous cases where the continuous use of land for lawn purposes in connection with a residence for more than twenty-one years was sufficient to prove a claim of adverse possession, the most similar case to that presented today is *Inn Le'Daerda, supra.* Therein, two property owners, Dixon and Phillips prevailed on their adverse possession claims for doing little more than maintaining a lawn on the property in dispute for more than twenty-one years. In fact, Dixon was able to include in his twenty-one years, an eight year stretch where his next door neighbor, Phillips, simply maintained the lawn on the property. During that period, there was not even a residence upon Dixon's lot. *Inn Le'Daerda,* 360 A.2d at 218. We are unable to find any significant distinction between Dixon's and Phillips' adverse possession claims and appellants'. Accordingly, we are convinced that appellants' have proven their right to title of the property by means of adverse possession.

▓▓ Finally, we must address the issue in this case which is the subject of great contention: whether appellants' possession of the land was hostile. As previously stated, the word "hostile" as an element of adverse possession does not mean "ill will" or actual "hostility," but simply implies an assertion of ownership rights which are adverse to those of the true owner and all others. *Glenn,* 595 A.2d at 612, citing *Schlagel, supra.* Further, if all the elements of adverse possession are established, the element of hostility is implied. *Glenn,* 595 A.2d at 612, citing *Schlagel, supra.* As we have previously found, all the other elements of adverse possession are present, and the lower court should have found that hostility was therefore implied. However, the lower court found that appellants' use of the property was not hostile because the Bryants had "implied" their consent to appellants' use of the disputed tract.

We must reject the lower court's conclusion. At trial, appellant Joseph Brennan testified that he has maintained the property in

question in the same condition as that of the yard to his residence since April of 1973, and that no one gave him permission so to do. N.T., pp. 14, 18. Appellant Rosemary Brennan testified consistently with her husband. Appellants' neighbors, Norma Jean Rife and Judith Hillard, testified that appellants maintained the disputed tract as if it was part of the yard to their residence since 1973, in addition to parking vehicles on the property in question. N.T., pp. 41, 43, 47.

Most significantly, Richard Bryant, owner of the property from the time when appellants began residing on their adjoining tract in 1973 until 1978, specifically testified that he never gave anyone permission to use land in question, N.T., p. 54, and, from 1973 through 1978, he was aware that the property was being maintained by appellants as an extension of the lawn of their residence, N.T., pp. 54, 55. Mr. Bryant testified that he spoke with Mr. Brennan while he owned the property, but the two never discussed Mr. Brennan's maintenance of the property because Mr. Bryant "didn't care." N.T., p. 68. Mr. Bryant indicated that he farmed and mowed the larger parcel of which the land in dispute was a part with a farm tractor while he was the owner, but he did not tend the land in dispute in any manner. N.T., p. 65. Mr. Bryant also testified that he has seen the property several times a year since he sold the property, and the property has been consistently maintained as a part of the residence's yard. N.T., pp. 56–57.

Upon those facts, we must disagree with the lower court's conclusion that appellants' use of the property was permissive. The lower court erred when it "implied consent from the relationship and conduct of the Bryants and [appellants]." Trial Court Opinion, filed May 20, 1997, p. 4. Herein, the record clearly reveals that appellants neither asked for nor received permission from Mr. Bryant (or any subsequent title-holder) to use the property, and appellants used the property as they pleased from April of 1973, without permission. Therefore, appellants' possession of the property was "hostile" from its inception. *Glenn,* 595 A.2d at 612 ("hostility" implies an assertion of ownership rights adverse to that of the true owner); *cf.*

*Adshead v. Sprung*, 248 Pa.Super. 253, 375 A.2d 83, 85 (1977) (where plaintiff used driveway as she pleased without asking for or receiving permission for more than twenty-one years, use was "adverse, open, continuous, notorious and uninterrupted" and plaintiff was entitled to easement by prescription).

In further support of its determination that appellants had Mr. Bryant's permission to use the land, the lower court apparently relied upon the testimony of Eloise deLaski, who was the wife of the general partner of Manhaven Associates. Mrs. deLaski testified that at the time Manhaven Associates purchased the land from Mr. Bryant, Mr. Bryant indicated, "[T]hat he allowed the property owner (Joseph Brennan) to cut beyond his, you know, his own lines." N.T., p. 87. We find that Mrs. deLaski's testimony is not dispositive upon the issue of consent for two reasons. First, it is abundantly clear from the record that Mr. Bryant did not expressly consent to appellants' use of the property. Second, Mrs. deLaski's testimony is merely consistent with Mr. Bryant's testimony that he knew appellants were using the property and that he did not object. In other words, Mr. Bryant "allowed" appellants to use the property by acquiescence, not by affirmative, express permission.

■ The lower court's conclusion that appellants had permission to use the property is not supported by the evidence. It is incumbent upon the true owner of the land to prove the alleged permissive use. *Waltimyer*, 556 A.2d at 914, citing *Adshead, supra*. In this case, the lower court found Mr. Bryant's conduct implied consent to appellants' use of the property in dispute. However, we must reject such a holding. If an adverse use is rendered permissive simply because the true owner who is aware of the adverse use does not expressly object, we must question when, if ever, an adverse possession claim would be successful. It is the continuation of the hostile use by the adverse possessor in the face of the true owner's knowledge which is the very essence of an adverse possession claim. Simply, the true owner must affirmatively act to interrupt the adverse possessor's use of the property. *See Reed*, 471 A.2d at 85. He cannot sit passively, knowing of the adverse use and, then, claim to have given permission implicitly to the adverse possessor by his failure to object. Permission is an act of commission, not omission.

■ While Mr. Bryant and the subsequent title-holders may not have cared whether appellants used their land, none of the owners ever expressly objected to appellants' exercise of dominion over the land in question. When no special relationship exists between the parties, a sufficiently notorious use will be presumed to be enough to alert the owner of the land to an adverse claim. *Waltimyer v. Smith*, 383 Pa.Super. 291, 556 A.2d 912, 914 (1989), citing *Adshead, supra*. Here, as previously stated, appellants' use of the property was sufficiently "notorious" to alert the true owners of the land to their adverse claim. For example, Mr. Bryant expressly testified that he was aware that appellants' were maintaining the land in dispute.

The lower court also concluded that appellants failed to keep their "flag flying," citing to the testimony of Donald Resh, P.E. Mr. Resh testified that he surveyed the property in 1976. The lower court noted that "Mr. Resh found maintenance of the adjoining properties consistent with recorded boundary lines...." Trial Court Opinion, May 20, 1997, p. 5. However, upon review, we find such a conclusion is not supported by the record. Mr. Resh testified that the area south of appellants' property was mowed to a height of six inches with a field tractor and the area around appellants' residence was mowed with a lawn mower. N.T., p. 73. When asked whether he remembered whether the grass to the south of appellants' residence between the old farm lane and appellants' property line, i.e., the land held by adverse possession, was mowed to the same height as the grass to the north of appellants' boundary, Mr. Resh could not remember. N.T., 75. Given the wealth of evidence that appellants maintained the disputed tract as if it were part of their lawn and Mr. Bryant's testimony that he cut the remainder of the larger parcel with a field tractor, we must reject the lower court's conclusion that appellants' did not keep their "flag flying" by sufficiently main-

taining the property, based upon Mr. Resh's equivocal testimony.

 Since appellants' use of the property was adverse from its inception, one of the true title-holders, in order to interrupt appellants' continuous adverse use and toll the running of the statute of limitations against that true owner, had to: "a) bring and pursue to judgment legal proceedings in which the use is determined to be without legal justification; or b) cause a cessation of the use without the aid of legal proceedings." *Reed*, 471 A.2d at 85, citing Restatement of Property, § 459(2). Under this rule, a "single instance of attempted interruption of an adverse user ... resulting in no actual interruption and followed by no attempt to test the right, does not necessarily destroy its continuity." *Reed*, 471 A.2d at 85, quoting 3 Am.Jur.2d, Adverse Possession § 68 (citations omitted).

 Herein, the record reveals only two arguable attempts to interrupt appellants' use of the property. First, in 1976, Donald Resh, P.E., surveyed the property for Mr. Bryant while preparing a subdivision plan for Mr. Bryant's adjoining parcel. We find this action was not sufficient to interrupt appellants' adverse possession of the property. The record reveals Mr. Resh used the existing boundary markers, N.T., pp. 71–72, and there is absolutely no evidence that appellants were aware of Mr. Resh's activities. The simply act of surveying the property is not sufficient to break the continuity of appellants' possession, especially where there is no evidence to suggest that appellants were even aware of the surveyor's activity. *Cf. Reed*, 471 A.2d at 85–86 (extra-judicial act of posting a "No Trespassing" sign which adverse possessor removed after twenty-four hours, on lot claimed by adverse possession did not cause a cessation of the adverse use).[3]

 Also, in an attempt to interrupt appellants' adverse use of the property, appellee presented the testimony of John Huenke, a construction superintendent for appellee, who was in charge of the Manchester Cross-

ings site of which the land in dispute is part. Mr. Huenke testified that on March 22, 1994, he met with Joseph Brennan to discuss, among other things, the fact that appellants were maintaining land well beyond their property boundary. N.T., pp. 81–82. Mr. Huenke further indicated that he told Joseph Brennan that he "[wasn't] going to worry about it" until the company began construction of project phase which abutted the southern side of his property. N.T., p. 82. Once again, we are not convinced that this action which was taken by appellee only one month before the twenty-one year period expired is sufficient to interrupt appellants' adverse possession. Appellee simply did not attempt to cause a cessation of appellants' use of the property. *Cf. Reed*, 471 A.2d at 85–86.

In sum, we find that appellants proved that they had "actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Glenn*, 595 A.2d at 610, quoting *Conneaut Lake Park*, 66 A.2d at 829. Accordingly, we reverse the decision of the court below and remand this action for entry of judgment in favor of appellant, following a determination by the court below of the legal description of the property to which appellants have obtained title by means of adverse possession.

Judgment reversed. Case remanded for proceedings consistent with the provisions of this opinion. Jurisdiction relinquished.

McEWEN, President Judge, dissents.

---

**3.** Moreover, if appellants knew that Mr. Resh had surveyed the property and they continued in their adverse use of the property, such defiance would further support their adverse possession claim.