J. S61015/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FREDERIC J. AMMERMAN AND | : | IN THE SUPERIOR COURT OF |
| DONA M. AMMERMAN, | : | PENNSYLVANIA |
| HUSBAND AND WIFE | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER J. SHAFFER AND | : | |
| BETH A. SHAFFER, | : | |
| HUSBAND AND WIFE, | : | No. 387 WDA 2014 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered February 19, 2014,
in the Court of Common Pleas of Clearfield County
Civil Division at No. 2010-419-CD

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED OCTOBER 03, 2014**

Appellants, Christopher J. Shaffer and Beth A. Shaffer ("the Shaffers"), appeal from the order granting appellees, Frederic J. Ammerman and Dona M. Ammerman ("the Ammermans"), possession of a strip of property running between their respective household properties by adverse possession.  Finding no error, we affirm.

The following synopsis is distilled from the trial court's findings of fact:[1]

---

* Retired Senior Judge assigned to the Superior Court.

[1] We have included some facts outside of the findings; we reference the notes of testimony where we have done so.

The Ammermans acquired their property on June 28, 1986, and the Shaffers acquired their property, which adjoins the Ammermans' along a north-south boundary, on June 11, 1998. At the time Frederic Ammerman purchased his property, he was shown by his predecessor in title, a Mr. Allison, a one-inch rebar located in the western corner of the boundary between the Ammerman and Shaffer properties. Allison indicated that this marked the property line which ran east out to the street ("the Allison line"). When the Shaffers moved into their property, Frederic Ammerman showed the rebar to Christopher Shaffer and motioned where the property line ran. (Notes of testimony, 3/5/12 at 123-124.) In the ensuing years, the Ammermans took care of the small, sloped strip demarcated by the Allison line, mowing grass, raking leaves, weeding, reseeding, and other activities. Neighbors, whom the trial court specifically found credible, confirmed this activity. Young men who were hired by the Ammermans to perform yard work also testified to caring for this strip. The Ammermans also erected a fence within the claimed land and took down a different fence within the claimed land without complaint from the Shaffers.

Eventually, in preparing to construct a garage, the Shaffers had a survey conducted of their property. (*Id.* at 133-134.) Curry and Associates ("Curry") performed a survey and produced a map dated March 18, 2009. Curry discovered the actual pins marking the property line between the properties. The Curry survey ("the Curry line") revealed that the

Allison rebar is, in fact, 1.12 feet into the Shaffer property, and that the Allison line cuts a small triangular strip from the Shaffer property that is .42 feet wide at its narrowest, 8.39 feet at its widest, and comprises approximately 984 square feet.

In 2003, before the dispute arose between the parties, a large pine tree was removed from this strip of land. Significantly, the parties agreed to split the cost of removing this tree. In their post-trial motion, filed April 23, 2012, the Shaffers asserted that this tree was located on the Curry line. The trial court specifically found that the tree was located on the Allison line. (Finding of Fact No. 12.)[2]

On March 15, 2010, the Ammermans initiated legal action, filing a complaint seeking to quiet title and a declaratory judgment that they owned the strip in question by adverse possession. Following the Shaffers' answer and new matter, testimony was taken from various witnesses. On April 12, 2012, the trial court found in favor of the Ammermans deciding that they had proven by a preponderance of the evidence that they had acquired the strip of land through adverse possession. On April 23, 2012, the Shaffers filed a motion for post-trial relief. In that motion, the Shaffers essentially argued that by agreeing to split the cost of removing the pine tree, the

---

[2] The Curry survey map appears to show the tree stump midway between the Allison and Curry lines.

Ammermans recognized that the Shaffers had title to the disputed strip such that it defeated a claim of adverse possession.

On September 18, 2012, the Shaffers filed a timely notice of appeal. On October 4, 2012, the Shaffers filed a Statement of Matters Complained of on Appeal that raised the following issues:

1. Does the mowing by one neighbor with the consent of the other constitute conduct sufficient to make a successful claim of adverse possession when neither were sure of the precise location of the common boundary?

2. Does occasional weeding or planting behind a "boundary" fence constitute conduct sufficient to make a successful claim of adverse possession?

3. Does the cost sharing arrangement for expenses incurred when a large tree in the area of the actual boundary toll any claim of adverse possession?

Statement of Matters Complained of on Appeal, 10/4/12.

On appeal, this court did not address the above issues. Rather, this court found that the trial court had applied the wrong burden of proof, preponderance of the evidence, to the Ammermans' claim; adverse possession must be demonstrated by clear and convincing evidence. *Ammerman v. Shaffer*, 87 A.3d 893 (Pa.Super. 2013) (unpublished memorandum) *See Stevenson v. Stein*, 195 A.2d 268, 270 (Pa. 1963) ("Of course, the burden of proving this adverse possession was upon the plaintiff by credible, clear and definitive proof."). Consequently, this court

vacated the order and remanded for the trial court to re-assess the evidence using the proper burden of proof.

On February 10, 2014, the trial court re-affirmed its verdict using the proper burden of proof. No post-trial motions were filed. On March 5, 2014, the Shaffers filed their notice of appeal. On March 31, 2014, the Ammermans filed a motion to quash the appeal because the Shaffers failed to preserve any issues by filing any post-trial motion. On April 1, 2014, the Shaffers filed their Statement of Matters Complained of on Appeal which raised the identical issues they had raised initially on appeal. On May 6, 2014, this court denied the motion to quash without prejudice to raise the matter before the panel. We note that the Ammermans again argue that this appeal should be quashed. We must determine whether this appeal must be quashed before endeavoring to analyze any of the issues raised on appeal. We find that quashal is not warranted.

The Ammermans contend that the Shaffers have waived their issues under Pa.R.C.P., Rule 227.1, 42 Pa.C.S.A., by failing to file new post-trial motions following the trial court's verdict upon remand. In **Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.**, 52 A.3d 1233 (Pa. 2012), this court quashed an appellant's appeal following remand for a recalculation of damages because the appellant failed to file a second round of post-trial motions following the recalculation on remand. Our supreme court vacated our decision and held that Rule 227.1's

requirement for post-trial motions to avoid waiver does not always apply to

remanded cases:

> Obviously, if an appellate court remands for a new trial, the civil trial rules apply again, and in full force. But, the circumstance here--not an uncommon scenario--involves a gray area, where there are to be further proceedings below, but the proceedings do not amount to a new trial. Remands may encompass a variety of proceedings: remand for a new trial, in whole or in part, remand for a ministerial act such as entry of judgment, remand for opinion or explanation, remand for an evidentiary hearing, remand to apply the ruling of the appellate court to settled facts, etc. Many remand proceedings may include submission of additional evidence, or resolution of disputed factual positions, a variety of iterations that would fall short of a full-blown trial. Thus, remands may encompass purely factual disputes, purely legal questions, mixed questions, or some measure of all questions. Our Rule as written does not purport to account for the variety of these remand proceedings. Rather, it speaks to "trials," in the midst of a series of rules governing civil trial practice.
>
> . . . .
>
> Our primary holding remains that, notwithstanding the interpretation of the Superior Court which was powered by its accurate estimation of the Rule's overriding purpose, the proper interpretation of the Rule is that it does not purport to address the remand scenario, and thus a party cannot be faulted--upon pain of waiver--for failing to file post-trial motions to a proceeding upon remand which amounts to less than an actual trial. A remand proceeding such as the one here, that relies on an existing record, is not a trial--even if the trial court draws different conclusions from that record to comport with an appellate court's directive. Thus, the remand proceeding in this instance, where the trial judge merely reached a different damage

> calculation based upon facts and contract terms already in the record, was not a "trial," and Rule 227.1 does not apply.

***Newman***, 52 A.3d at 1246-1247, 1251.

Instantly, upon remand, no new evidence was taken. The trial court's only function was to re-weigh the existing evidence using the appropriate burden of proof. Under ***Newman***, that does not constitute a new trial and the Shaffers did not need to file new post-trial motions.

Moreover, the purpose of post-trial motion practice has been often stated:

> The Pennsylvania Supreme Court in ***Sahutsky*** [***v. H.H. Knoebel Sons, t/a Knoebel's Grove***, 782 A.2d 996 (Pa. 2001)] determined that "issues not raised in post-trial motions are waived," and reiterated:
>
>> the filing of post-trial motions . . . ensure[s] that that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors . . . advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be

> free to more expeditiously dispose of the
> issues properly preserved for appeal. . . .
>
> ***Id.*** citing ***Benson v. Penn Central Transp. Co.***,
> 463 Pa. 37, 342 A.2d 393, 394 (1975) (internal
> citations omitted).

***D.L. Forrey & Associates, Inc. v. Fuel City Truck Stop, Inc.***, 71 A.3d 915, 919 (Pa.Super. 2013).

The Shaffers attempted to comply with post-trial motioning practice when they filed their original post-trial motions on April 23, 2012. This court did not address those issues before remanding the case to be re-decided using the proper burden of proof. We find that the issues raised in the Shaffers' original post-trial motion are properly before us for review. Thus, for these reasons, the motion to quash will be denied.

The Shaffers raise the following issues on appeal:

> 1. Does the mowing by one neighbor with the consent of the other constitute conduct sufficient to make a successful claim of adverse possession when neither were sure of the precise location of the common boundary?
>
> 2. Does intermittent weeding or planting behind a fence, as well as trimming a large and unruly hedge, coupled with a joint agreement in 2003 to remove a pine tree and share the expense, constitute conduct sufficient to meet the required hostility to support a claim of adverse possession[?]

Shaffers' brief at 4.

We begin by noting our standard of review:

The case of **Glenn v. Shuey**, 407 Pa.Super. 213, 595 A.2d 606 (1991) thoroughly sets forth the standard of review to be applied today and the substantive law of adverse possession, as follows:

At the outset, we note that "the factual findings of a trial court sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion." **Arcadia Co., Inc. v. Peles**, 395 Pa.Super. 203, 207-208, 576 A.2d 1114, 1116 (1990) (citing **Pato v. Cernuska**, 342 Pa.Super. 609, 612, 493 A.2d 758, 759 (1985)); **see also Bigham v. Wenschhof**, 295 Pa.Super. 146, 148, 441 A.2d 391, 392 (1982).

It is well settled that a party claiming title to real property by adverse possession must affirmatively prove that he or she had "actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years." **Conneaut Lake Park, Inc. v. Klingensmith**, 362 Pa. 592, 594-95, 66 A.2d 828, 829 (1949) (citing **Parks v. Pennsylvania R.R. Co.**, 301 Pa. 475, 152 A. 682 (1930)); **see also Klos v. Molenda**, 355 Pa.Super. 399, 513 A.2d 490 (1986); **Tioga Coal Co. v. Supermarkets General Corp.**, 289 Pa.Super. 344, 433 A.2d 483 (1981), **alloc. denied**, 500 Pa. 555, 458 A.2d 1355 (1983). Each of these elements must exist, otherwise the possession will not confer title. **Conneaut Lake**, 362 Pa. at 594-595, 66 A.2d at 829. "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts . . . He must keep his flag flying and present a hostile front to all adverse

J. S61015/14

> pretensions." **Klos**, 355 Pa.Super. at
> 403, 513 A.2d at 492 (citations and
> quotations omitted).

**Brennan v. Manchester Crossings, Inc.**, 708 A.2d 815, 817 (Pa.Super. 1998), **appeal denied**, 727 A.2d 1115 (Pa. 1998), quoting **Glenn v. Shuey**.

In their first argument, the Shaffers contend that the trial court committed a clear error of law in relying upon three cases: **Ewing v. Dauphin County Tax Claim Bureau**, 375 A.2d 1373 (Pa.Cmwlth. 1977), **Reed v. Wolyniec**, 471 A.2d 80 (Pa.Super. 1983), and **Brennan**. In each of these cases, adverse possession was found based upon the adverse possessor's actions in cutting and planting of grass on the subject property (**Ewing**), planting and maintaining various flowers and shrubs on the subject property and placing a pole for a bird house (**Reed**), and maintaining a lawn, trimming bushes and trees, and raking leaves (**Brennan**). The Shaffers attempt to distinguish these cases on the basis that the property adversely possessed constituted an entire lot as opposed to a narrow strip of property between lots in a mature subdivision. The Shaffers do not explain why this distinction is important, nor do they cite to case law explaining why this distinction makes a difference, undoubtedly because such a distinction is specious. Furthermore, we direct the Shaffers' attention to **Klos v. Molenda**, 513 A.2d 490 (Pa.Super. 1986). Therein, Michael and Albina Klos were found to have adversely possessed a narrow, 30-inch strip of land

- 10 -

located between the parties' lots in Scranton because they planted grass on the strip and maintained it in excess of 21 years. We see no merit in the Shaffers' first argument.

In their second argument, the Shaffers essentially argue that the Ammermans' conduct in maintaining the disputed property was merely permissive and tolerated and the fact that the parties cooperated in the removal of the pine tree vitiated the hostility element of adverse possession. We disagree.

As used in adverse possession, the term hostile does not imply ill-will, but instead implies an assertion of ownership rights adverse to that of the true owner and all others. **Brennan**, 708 A.2d at 818. Instantly, there was more here than just the Ammermans' yard work to establish hostile possession. Christopher Shaffer admitted that when he first purchased the Shaffers' property, Frederic Ammerman showed him the Allison rebar and indicated that the Allison line constituted the actual property line. This would also satisfy the hostile element as Frederic Ammerman was openly asserting his claim of the property up to the Allison line to the true owner.

We also do not find that the joint removal of the pine tree vitiated the hostile element. A party might offer to pay a neighbor part of the cost of removing a tree wholly on the neighbor's property because the tree over hangs the first party's property and is considered a nuisance. In other

words, helping to pay for the removal of a tree is not necessarily an indication or assertion of property rights.

Accordingly, having found no error in the issues raised on appeal, we will affirm the order below.

Order affirmed. Motion to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/03/2014