J-S07019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| THE WILLIAM F. AIKEN, JR. LIVING | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| TRUST FORMERLY WILLIAM F. AIKEN | : | PENNSYLVANIA |
| AND JUDITH B. AIKEN | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL B. FISHER AND LINDA K. | : | No. 1063 WDA 2021 |
| FISHER, THEIR HEIRS, | : | |
| SUCCESSORS, AND ASSIGNS | : | |
| | : | |
| | : | |
| APPEAL OF: THE WILLIAM F. AIKEN, | : | |
| JR. LIVING TRUST | : | |

Appeal from the Judgment Entered August 30, 2021
In the Court of Common Pleas of Fayette County
Civil Division at No(s): No. 3429 of 2010 G.D.

BEFORE: OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: June 7, 2022**

The William F. Aiken, Jr. living trust ("the trust") formerly William F. Aiken and Judith B. Aiken appeals from the judgment entered in favor of Daniel B. Fisher and Linda K. Fisher (collectively, "the Fishers"), their heirs, successors, and assigns. We affirm.

Janet R. Bygate ("Bygate") owned a property known as "Five Gates Farm." A 3.3-acre parcel of Five Gates Farm ("the deeded parcel") was later

_____

[*] Retired Senior Judge assigned to the Superior Court.

separated and sold to Edgar L. Wareham.[1]  Five Gates Farm surrounded the deeded parcel to the northwest, northeast, and southwest, and Route 381 ran on the deeded parcel's southeast border.  The deeded parcel included what is now a residence, shed, and barn, as well as a private lane connecting to Route 381.  The private lane led to a small parking area across from the residence, then around the shed to a larger parking and work area behind the residence.  A branch of the private lane also led from the deeded parcel to a rental home on Five Gates Farm.

In 1982, William F. and Judith B. Aiken (collectively, "the Aikens") purchased Five Gates Farm from Bygate's estate.[2]  In 1986, the Fishers purchased the deeded parcel from Wareham, and the 1986 deed memorialized a ten-foot right-of-way in favor of Ms. Bygate, her heirs, and assigns.  The Fishers moved into the residence on the deeded parcel and began operating a landscaping business.  They built an addition to the residence in 1998 and a new barn in 2007.

_____

[1] Edward L. Warenham acquired the deeded parcel, and sole title passed upon his death to his son, Edgar L. Wareham, Jr. ("Wareham").

[2] Judith B. Aiken was the daughter of Ms. Bygate.  The Aikens are the parents of William F. Aiken, Jr., who has lived on Five Gates Farm since 2003.

In 2010, after conversations between William F. Aiken, Jr., and the Fishers, the Fishers had Joseph H. Destro ("Destro") conduct a survey based, in part, on Wareham's representations of the boundaries of the deeded parcel. In July 2010, the Fishers recorded a statement of adverse possession claiming land from Five Gates Farm, which was depicted in Destro's 2010 survey as follows.



Trial Exhibit A. As illustrated in the survey, the land in dispute totaled approximately 1.6 acres ("the disputed land"), and included areas to the northeast ("the northeast area"), the northwest ("the northwest area"), and the southwest ("the southwest area") of the deeded parcel.

The Aikens filed a complaint in ejectment and quiet title in December 2010 concerning the disputed land. The Fishers filed an answer and new matter reasserting their claim of adverse possession of that land. In 2012,

the Aikens transferred Five Gates Farm to the trust, and the trial court subsequently granted leave to substitute the trust for the Aikens.

At a non-jury trial in June 2020, the trust established it held title to the disputed land. William F. Aiken, Jr., testified that he exercised ownership rights over the disputed land and challenged the Fishers' encroachments.[3] *See* N.T., 6/23 to 6/24/20, at 137-47.

To impeach the Fisher's claim that they had used or developed the disputed land for twenty-one years, the trust displayed aerial photographs of the deeded parcel and the disputed land from "Google Earth" taken between 1993 and 2012.[4] *See* N.T., 6/23 to 6/24/20, at 47-57. The trust also offered into evidence the Fishers' 1998 and 2007 applications for permits to improve their home and construct a new barn, emphasizing that in those applications the Fishers represented to public authorities that they only owned, and used for residential purposes, 3.3 acres, *i.e.*, the approximate size of the deeded parcel, but not the additional 1.6 acres they claimed by adverse possession. *See* N.T., 6/23 to 6/24/20, at 7-9; Trial Exhibits 10 and 11.

---

[3] Specifically, William F. Aiken, Jr., testified that he had a neighboring farmer "brush hog" the open areas in the southwest and northwest areas, usually once a year. *See* N.T., 6/23 to 6/24/20, at 155-56, 175. He also testified that he was responsible for managing and maintaining Five Acres Farm even when his parents held title. N.T., 6/23 to 6/24/20, at 134-35. He testified that one summer in the early 2000s, he spent weeks removing invasive shrubs in the southwest and northeast areas without interference from the Fishers. *See* N.T., 6/23 to 6/24/20, at 136.

[4] The aerial photographs were marked as exhibits, but not admitted into evidence.

The Fishers claimed they began using the disputed land when they purchased the deeded parcel in 1986, based on Wareham's representations of the boundaries of the parcel. *See* N.T., 6/23 to 6/24/20, at 108-28, 219-226, 235-48. Specifically, the Fishers testified that beginning in 1986, they continuously used the three distinct areas of the disputed land as follows: 1) in the northeast area, they used a small parking lot and maintained the area; 2) in the northwest area, they used the parking and work area for the landscaping business; and 3) in the southwest area, they mowed and maintained the landscape. Destro, the Fishers' surveyor, testified that in 2010, he marked the boundaries of the Fishers' claim to the disputed land based on physical evidence of the possession of the land, including differences in the way the land was "manicured," maintained, or groomed. *See* N.T., 6/23 to 6/24/20, at 192-93.

On August 3, 2021, the trial court found in favor of the Fishers in an opinion and order. The trust timely filed post-trial motions seeking a judgment notwithstanding the court's decision. The court denied the post-trial motions, and the trust requested the entry of judgment on August 30, 2021. The trust timely appealed, and both it and the trial court complied with Pa.R.A.P. 1925.[5]

The trust raises the following issues for review:

_____

[5] The trial court did not write a separate Rule 1925(a) opinion but relied on its August 3, 2021 opinion as its response to the trust's statement of errors complained of on appeal.

1. Whether the trial court erred in finding the [Fishers] proved all of the necessary elements of adverse possession?

2. Whether the [trial court] erred in finding that the [Fishers] adversely possessed the real estate when they had in fact filed two distinct applications for municipal permits where they expressly limited their ownership to the parameters set forth in their deed.

3. Whether the trial court erred in finding the [Fishers] proved all of the necessary elements of adverse possession with respect to the land to the [southwest] of the [deeded] parcel?

4. Whether the trial court erred in finding the [Fishers] proved all of the necessary elements of adverse possession with respect to the land to the [northwest] of the [deeded] parcel?

5. Whether the trial court erred in finding the Defendants proved all of the necessary elements of adverse possession with respect to the land to the [northeast] of the [deeded] parcel?

Trust's Brief at 2-3 (reordered). The trust's issues challenge the trial court's determination that the Fishers adversely possessed the disputed land, and it requests a remand for the entry of a judgment in its favor. **See** Trust's Brief at 21.

The standard of review of a non-jury decision is limited to whether competent evidence supports the trial court's findings and whether the court properly applied the law. **See Shaffer v. O'Toole**, 964 A.2d 420, 422 (Pa. Super. 2009). This Court gives a trial judge's determination the same weight and effect as a verdict by a jury and will not disturb the trial judge's decision absent an abuse of discretion or an error of law. **See id**. Further, this Court reviews the evidence in a light most favorable to the prevailing party and accepts as true the evidence and proper inferences that favors the prevailing party. **See id.**

"Adverse possession is an extraordinary doctrine that permits one to achieve ownership of another's real property by operation of law." *City of Philadelphia v. Galdo*, 217 A.3d 811, 820 (Pa. 2019) (internal citation omitted). Adverse possession reflects "the sound public policy to encourage those who diligently develop and improve the land as against those who are content to hold the bare legal title inactively for many years." *Id*. (internal citation and quotation marks omitted).

The elements of adverse possession are well settled.

> [A] party claiming title to real property by adverse possession must affirmatively prove that he or she had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years. Each of these elements must exist, otherwise the possession will not confer title.

*Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 817 (Pa. Super. 1998) (internal citations and quotation marks omitted). Parties claiming adverse possession bear the burden of proving adverse possession with credible, clear, and definitive proof. *See Johnson v. Tele-Media Co. of McKean Cnty.*, 90 A.3d 736, 741 (Pa. Super. 2014).

Actual possession is not equivalent to occupancy but requires a showing of dominion over the land. *See Watkins v. Watkins*, 775 A.2d 841, 846 (Pa. Super. 2001). There is no fixed rule to determine what constitutes actual and continuous possession for purposes of adverse possession, and a court must consider the facts of each case and the character of the land. *See id*. The law does not require that claimants continuously occupy the land or perform daily acts of ownership. *See Brennan*, 708 A.2d at 818. However, sporadic

- 7 -

or temporary acts will not operate to give the claimant title. **See Johnson**, 90 A.3d at 741 (finding that occasional mowing of a portion of the disputed land and occasional uses of the land were insufficient to establish an interest in the land by adverse possession). **But see Brennan**, 708 A.2d at 821 (concluding that the claimant's continuous maintenance of a lawn on the disputed property was sufficient to establish adverse possession).

Visible and notorious possession requires conduct sufficient to place a reasonable person on notice that claimants are holding the disputed land as their own. **See Watkins**, 775 A.2d at 846; **accord Brennan**, 708 A.2d at 821. To constitute distinct and exclusive possession, claimants must possess the land in a manner characteristic of use by an owner. **See Watkins**, 775 A.2d at 846. Lastly, hostility does not mean ill will, but requires that claimants' possession be of such import as to deny another's title. **See Brennan**, 708 A.2d at 818.

The trust's first issue challenges the sufficiency of the evidence that the Fishers actually possessed the disputed land and that their possession was visible, notorious, distinct, exclusive, and hostile. **See** Trust's Brief at 8-11. The trust contends that the Fishers did not fence off or build structures on the disputed land, or prevent William F. Aiken, Jr., from accessing the disputed land. **See id**. at 9-10. It also contends that the trial court erred by relying on photographs showing the Fishers' children playing on a lawn and testimony

that the Fishers used the disputed land, which, it claims, only demonstrated the Fishers' sporadic and temporary activities on the disputed land. **See id**.[6]

The trial court, in finding in favor of the Fishers, credited their evidence and concluded that: 1) the Fishers actually and continually possessed the disputed land for more than twenty-one years; 2) their possession was sufficiently visible and notorious to put the Aikens and the trust on notice; and 3) the Fishers acted as owners of the land to satisfy the exclusive and distinctive elements of adverse possession.[7] **See** Trial Court Opinion, 8/3/21, at 19-26. The Fishers, the court concluded, "maintained the property

---

[6] We could find this claim waived, but decline to do so under the circumstances presented in this case. A party challenging the sufficiency of the evidence in a non-jury trial must preserve his claim by moving for a non-suit or a directed verdict **and then** seeking a judgment notwithstanding the verdict in a post-trial motion. **See Haan v. Wells**, 103 A.3d 60, 66-68, 70 (Pa. Super. 2014) (noting the two grounds for entry of a judgment notwithstanding the verdict: (1) the moving party is entitled to a judgment as a matter of law; or (2) the evidence was such that no two reasonable minds could disagree that the moving party should have prevailed).

The trust did not move for nonsuit or a directed verdict following the non-jury trial. **See** N.T., 6/23 to 6/24/20, at 259. Nevertheless, the trial court denied the trust's post-trial motions seeking a judgment in its favor without concluding the trust had waived its sufficiency challenge. We likewise will not waiver. **See Capital Care Corp. v. Hunt**, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where a party failed to move for a directed verdict, sought judgment notwithstanding the verdict in a post-trial motion, and the trial court addressed the claim as presented in the post-trial motion).

[7] As noted by the trial court, the trust established its title to the disputed land under the deeds transferring Five Gate Farms to the Aikens and then to the trust. **See** Trial Court Opinion, 8/3/21, at 19. The Fishers, therefore, bore the burden of establishing their claim of adverse possession. **See id**.; **see also Conneaut Lake Park v. Klingensmith**, 66 A.2d 828, 829 (Pa. 1949).

- 9 -

surrounding their lot by cutting the grass, planting and maintaining various shrubbery . . . and generally using the land as an extension of their own property." *Id.* at 22.

We conclude that competent evidence supports the trial court's findings and conclusions. Destro surveyed the area in 2010 based on physical evidence of possession and the Fishers' assertions of what they believed they owned. *See* N.T., 6/23 to 6/24/20, at 189. Destro surveyed the boundaries of the Fishers' areas of possession based on differences in how the land was maintained, manicured, or groomed. *See id*. at 193. In the southwest area, he noted the area was like a "park," and he accounted for the presence of stone planters, shrubs, and differences in how "vegetation was generally knocked down" or "weed whacked." *See id.* at 190-91. In northwest area, he noted that Fishers' use of the area as a parking and work area, as well as shrubs in the area. *See id.* at 189-90. In the northeast area, Destro observed the small parking lot, shrubs, and rock beds to the east of the private lane. *See id.* at 19-20.

Destro's survey was consistent with the Fishers' testimony that they continuously used and maintained the disputed land from the time of their 1986 purchase of the deeded property. *See id.* at 229, 236, 258. The Fishers' testimony established their maintenance of the southwest area including mowing and tending to the stone planters and shrubs. *See id.* at 227, 237-39. The Fishers also testified to the use of the northwest area as a parking and work area where they received deliveries every two weeks on forty-foot

trucks for their landscaping business, and stored equipment and material such as dozers, pavers, mulch, topsoil, sod, and shrubs. *See id.* at 216, 222, 240-41. In the northeast area, the Fishers used the parking lot for themselves, their customers, and their visitors. Further, they had previously set up a play area for their children when the children were young, planted trees, and maintained the planters and shrubbery. *See id*. at 228, 242-43.

Contrary to the trust's claim, the evidence of the Fishers' uses of the disputed land since 1986, which the trial court credited, established that their use was not sporadic or occasional. The Fishers' maintenance of the southwest area, their use of the parking lot and work area in the northwest area, and the uses of the parking area and maintenance of the northeast area, were sufficiently continuous, visible, and notorious to place the trust on notice that its ownership was disputed. The Fishers' uses also demonstrated that they were acting in a manner characteristic of an owner of the land as to satisfy the distinctive and exclusive elements of adverse possession. Lastly, although the Fishers did not exclude William F. Aiken, Jr., either in person or by erecting a fence, their possession of the land was hostile to the trust's claim of ownership by deed to the disputed land. Thus, the trial court did not err in finding sufficient competent evidence of the Fishers' claim of adverse possession, and we discern no basis to conclude that the trust was entitled to judgment as a matter of law. *See Brennan*, 708 A.2d at 821-22 (concluding that the trial court erred in finding against a claimant where evidence established that the claimant cared for disputed land as an extension of his

yard by mowing, seeding, fertilizing, and using the land for recreational and storage purposes); ***Inn Le'Daerda, Inc. v. Davis***, 360 A.2d 209, 218 (Pa. Super. 1976) (concluding maintenance of a lawn over the disputed land was sufficient to establish adverse possession).

We address the trust's next four issues together since they assert that the evidence contradicted the Fishers' claim of adverse possession.

The trust's second issue contends that the Fishers' 1998 and 2007 applications for permits to improve their home and build a new barn estop them from claiming ownership of the disputed land. ***See*** Trust's Brief at 5, 12-14. The trust asserts that the Fishers failed to hold themselves out as owners of the disputed land to public authorities and did not pay taxes on it. ***See id***. at 12-14.

The trust's other three issues address individually the evidence of adverse possession of each of the southwest, northwest, and northeast areas. The trust maintains that the Fishers' use of the southwest area was too sporadic to prove adverse possession, and that the trees and stone planters were placed in that area **before** the Fishers purchased the deeded parcel. ***See id***. at 17. Additionally, the trust emphasizes that Daniel B. Fisher testified he believed that stone planters marked the Fishers' southwest boundary, but that Destro's survey for the Fishers did not show the planters. ***See id***. at 15-16. The trust asserts that Destro's survey drew a boundary beyond what the Fishers actually believed they owned. ***See id***. at 16.

As to the northwest area, the trust claims that the Fishers' testimony that they operated the landscaping business on the disputed parcel beginning in 1986 was inconsistent with the fact that Daniel B. Fisher only incorporated the landscaping business in 1993, and, further, that in their application for permits, the Fishers represented that they used the deeded parcel for residential, not business, purposes. ***See*** at 18.

As to northeast area, the trust contends that the Fishers failed to establish their use of the entire area they claimed they adversely possessed. ***See id***. at 20. The trust argues that even if the Fishers used the small parking lot, the parking lot only encroached on a fraction of the northeast area. ***See id***.

The trial court resolved these issues in its findings of fact and credibility determinations. As to the Fishers' permit applications, the trial court credited the Fishers' testimony that they believed that the deeded parcel included the disputed lands. It also credited Daniel B. Fisher's testimony that the clerk at the office filled out that portion of the permit application for him. ***See*** Trial Court Opinion, 8/3/21, at 21 (noting that the court gave "no weight to the applications"). As to the southwest area, the trust's argument ignores the Fishers' other evidence, namely: Linda K. Fisher's testimony that Wareham told her that the southwest boundary existed beyond the planters and a line of trees; Daniel B. Fisher's testimony that he mowed an area beyond the planters; and their testimony that they used the entire area up to the outer boundary marked in Destro's survey. ***See id.*** at 8, 17; ***see also*** N.T., 6/23

to 6/24/20, 127-28.  As to northwest area, the court did not find it dispositive that Daniel B. Fisher had not incorporated his landscaping business until 1993 because the Fishers' evidence established their continuous use of the area as part of their business since 1986.  *See id.* at 20.  Lastly, as to the area along the northeast border of the deeded parcel, the trial court credited the Fishers' testimony that they used the entirety of the area by maintaining planters and shrubs, and planting trees, as well as regularly using the small parking lot in the area.  *See id.*

As noted above, there was ample support in the record for the trial court's findings.  The trust's last four issues fail to establish that it was entitled to judgment as a matter of law or that no two reasonable minds could disagree that it was entitled to a judgment in its favor.  Rather, the trust essentially relies on evidence and inferences that it maintains should have been drawn in its favor.[8]  However, this Court must review the record in a light most favorable to the Fishers as the prevailing party.  *See Shaffer*, 964 A.2d at 422.  Because we discern no abuse of discretion or error of law in the trial

---

[8] To the extent the trust challenges the weight of the evidence, the trust's post-trial motions did not request a new trial, nor did it request a new trial in this appeal.  When an appellant fails to request a new trial, this Court has no obligation to review the weight of the evidence.  *See Lanning v. West*, 803 A.2d 753, 766-67 (Pa. Super. 2002) (declining to review an appellant's weight of the evidence claim where the appellant only moved for judgment notwithstanding the verdict).  Therefore, we will not discuss the trust's last four issues as challenges to the weight of the evidence.

court's resolution of the conflicts in the evidence cited by the trust, the trust's last four issues merit no relief.

Judgment affirmed.[9]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2022

---

[9] Although not discussed by the parties or the trial court, the Fishers' adverse possession of the northeast area contains the branch of the private lane that connects the trust's rental property to Route 381 by way of Bygate's right of way over the deeded property.  We note that while conduct may be sufficient to acquire title to land, the same conduct may **not** be sufficient to extinguish an easement or right of way belonging to the trust.  *See Estojak v. Mazsa*, 562 A.2d 271, 275 (Pa. 1989); *Stozenski v. Borough of Forty Fort, Luzerne County*, 317 A.2d 602,  605 (Pa. 1974).  Nothing in this decision should be read as affecting the right of way over the deeded parcel or a right of way in the northeast area adversely possessed by the Fishers.